UNITED STATES of America, Plaintiff,

v.

Joseph William HILL, Jr., Laurena Ann Lux, Defendants.

No. 88–20097–01.

United States District Court,
D. Kansas.

Dec. 16, 1988.

Leon J. Patton, Asst. U.S. Atty., for plaintiff.

Carl Cornwell, John P. O'Connor, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

On November 1, 1988, the Grand Jury handed down a three-count indictment against defendants Hill and Lux. Count I charges the defendants with conspiracy to commit the offense of knowingly and intentionally possessing cocaine, with the intent to distribute. Count II charges defendants with knowingly and intentionally attempting to possess with the intent to distribute more than 500 grams of cocaine. Finally, Count III charges defendant Hill with knowingly and intentionally possessing with the intent to distribute approximately 15.5 grams of cocaine. The defendants have separately filed motions to suppress evidence and motions for severance. Additionally, defendant Lux moves the court to suppress a statement made during her interrogation at the Kansas City, Missouri Police Department. After an evidentiary hearing held November 30, 1988, at which only the testimony of Postal Inspector Stewart and Detective Burroughs was presented, and after reviewing the parties' briefs, the court is now prepared to rule on the motions.

*Defendant Lux's Motion to Suppress Statement*

Defendant Lux argues that an incriminating statement, made by her during an hour and one-half interrogation by Postal Inspector Laura Stewart and Kansas City, Missouri Police Detective Sam Burroughs was involuntary. Specifically, defendant Lux contends that her *Miranda* rights were violated when interrogation continued after she asked Detective Burroughs how long it would take to procure a lawyer and

if she would have to stay in jail overnight. Also, defendant Lux contends that her will was overborne by Detective Burroughs' interrogation techniques, thus making her statement involuntary.

The test for determining the admissibility of a confession is a two-part inquiry. *United States v. Sims,* 719 F.2d 375, 378 (11th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). First, the court must determine whether the government complied with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Second, if the government complied with *Miranda,* the court must then determine whether the confession was voluntary. *Sims,* 719 F.2d at 378.

■ The court finds that the government complied with the requirements of *Miranda.* Postal Inspector Laura Stewart testified that a "Warning and Waiver of Rights" form was read to defendant Lux, and she was allowed to read the form herself. This form contains the following "Warning:"

> BEFORE YOU ARE ASKED ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.
>
> ⟨ You have a right to remain silent.
>
> ⟨ Anything you say can be used against you in court.
>
> ⟨ You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
>
> ⟨ If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> ⟨ If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

Govt. Ex. 5. Defendant Lux signed below the warning, indicating that she understood the statement of her rights. Defendant Lux offered no evidence to indicate that her signature was involuntary or that she in fact did not understand her rights. Con-

sequently, the court concludes that the government complied with *Miranda* by informing defendant Lux of her rights, as outlined in the "warning."

■ The court also finds that the government did not violate defendant Lux's *Miranda* rights when Postal Inspector Stewart and Detective Burroughs continued their interrogation after defendant's question concerning how long it would take to procure an attorney. In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court established that once a defendant invokes her right to counsel, further questioning by police officers may not continue unless the defendant initiates the interrogation and the defendant validly waives her right to counsel. Thus, the first issue presented by defendant Lux's motion is whether her question to Detective Burroughs constituted an invocation of her right to counsel, requiring interrogation to cease. *See, e.g., Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984) (courts must first determine whether the accused actually invoked his right to counsel).

When an accused makes an equivocal or ambiguous request for counsel, some courts have held that all questioning must cease, other courts have held that requests falling below a defined threshold standard of clarity do not trigger the right to counsel, and still others have held that interrogation must immediately cease except for narrow questions designed to clarify the accused's earlier statement regarding counsel. *See id.* at 96 n. 3, 105 S.Ct. at 493 n. 3. We need not choose between these various approaches, since the court has determined that defendant Lux's question regarding how long it would take to procure an attorney was not even an equivocal request for counsel. As the Fifth Circuit has observed, the word "attorney" should not be given a talismanic quality such that any mention of an attorney during interrogation would invoke the *Edwards* rule. *Thompson v. Wainwright,* 601 F.2d 768, 772 (5th Cir. 1979); *Nash v. Estelle,* 597 F.2d 513 (5th Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *see also People v. Krueger,* 82 Ill.2d 305, 311, 45 Ill.Dec. 186, 189, 412 N.E.2d 537, 540 (1980), *cert.*

*denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 390 (1981) (quoted in *Smith,* 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3).

Defendant Lux offered no testimony concerning the meaning of her question to Detective Burroughs. Additionally, in a subsequent interview on November 21, 1988, with counsel present, defendant Lux admitted that she made no demand for an attorney during the interrogation. Because defendant Lux's question regarding how long it would take to procure an attorney was neither a clear nor an equivocal invocation of her right to counsel, the law enforcement officers were under no obligation to cease their interrogation. Accordingly, the court concludes that their continuing the interrogation did not violate defendant Lux's *Miranda* rights under the rule announced in *Edwards.*

In addition to proving compliance with *Miranda,* the government bears a heavy burden of proving waiver. *See, e.g. United States v. Bentley,* 726 F.2d 1124, 1128 (6th Cir.1984). Both Inspector Stewart and Detective Burroughs testified that defendant Lux voluntarily, knowingly and intelligently waived her rights to silence and counsel. Furthermore, defendant Lux signed the waiver portion of the "Warning and Waiver of Rights" form which states:

> I am willing to discuss subjects presented and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Govt. Ex. 5. Defendant Lux offered no evidence whatsoever to indicate that her waiver was anything but voluntary, knowing and intelligent. Therefore, we hold that the government has met its heavy burden of proving that defendant Lux waived her rights to silence and counsel.

■ Given the government's compliance with *Miranda,* the court must now determine whether defendant Lux's statement was voluntary. The government must prove voluntariness by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 484, 92 S.Ct. 619, 624, 30 L.Ed.2d 618

(1972); *United States v. Charles*, 738 F.2d 686, 696–97 n. 11 (5th Cir.1984). The voluntariness of an accused's statement is judged under the totality of the circumstances. *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 279, 4 L.Ed.2d 242 (1960).

Defendant Lux contends her will was overborne by Detective Burroughs' interrogation techniques. Specifically, defendant Lux states that (1) Detective Burroughs misrepresented that her co-defendant, Joseph Hill, had confessed and implicated her; (2) Detective Burroughs pounded his fists on the table and called her a liar; and (3) Detective Burroughs informed her that she would be charged by the Magistrate the following day, with or without an attorney. Again, defendant Lux presented no testimony to indicate that these interrogation techniques were such that her free will was overborne.

■ Although the manner in which a statement is extracted is relevant, it does not necessarily render a voluntary confession inadmissible. *Crane v. Kentucky*, 476 U.S. 683, 688, 106 S.Ct. 2142, 2145, 90 L.Ed. 2d 636 (1986); *Gandia v. Hoke*, 648 F.Supp. 1425, 1432 (E.D.N.Y.1986), *aff'd without opinion*, 819 F.2d 1129 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987). Moreover, an interrogator's using tricks or misrepresenting an accomplice's statement is insufficient to make an otherwise voluntary confession inadmissible. *See United States v. Castaneda–Castaneda*, 729 F.2d 1360, 1363 (11th Cir.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1202, 84 L.Ed.2d 345 (1985); *Gandia*, 648 F.Supp. at 1432.

The actions of Detective Burroughs in this case are not so extraordinary or egregious as to warrant a finding that they overbore the defendant's will. Therefore, we hold the statement made by defendant Lux to be voluntary under a totality of the circumstances.

Because the government complied with *Miranda* and defendant Lux made her statement voluntarily after a valid waiver of her rights to silence and counsel, the court holds her statement to be admissible. Consequently, defendant Lux's motion to suppress the statement made during her interrogation on October 18, 1988, is denied.

### Defendants' Separate Motions for Severance

■ The decision to sever the trials of persons indicted together is addressed to the trial court's sound discretion. *United States v. Dill*, 693 F.2d 1012, 1015 (10th Cir.1982). "In determining the merits of a motion for severance, the trial court must weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 2986, 64 L.Ed.2d 854 (1980). Defendants bear a heavy burden of proving prejudice sufficient to warrant severance. *United States v. Huff*, 699 F.2d 1027, 1030 (10th Cir.1983).

Defendant Lux requests severance, claiming that codefendant Hill's testimony is necessary to corroborate her defense of lack of knowledge, and that his testimony is unlikely to be available to her if their trials are not severed. At the November 30th hearing, counsel for defendant Hill assured the court that defendant Hill would testify at trial, whether the trial be joint or separate, and would waive his fifth amendment privilege against self incrimination. Consequently, the court finds no prejudice will result with regard to defendant Lux if the court tries the defendants jointly.

Defendant Hill requests severance, claiming that codefendant Lux's confession presents a *Bruton* problem. In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held "that the admission of incriminating nontestimonial statements made by one defendant, unavailable for cross-examination at trial, created a substantial risk of prejudice to the nondeclarant codefendant, because the jury might—despite limiting instructions to the contrary—consider them against the nondeclarant." *United States v. Basey*, 816 F.2d 980, 1004 (5th Cir.1987). Critical considerations in determining

whether a joint trial should be severed because of *Bruton* problems include whether the out-of-court statement clearly implicates the codefendant and whether the statement's impact will be significant or insignificant in light of the weight of other evidence against the defendant. *Id.*

Defendant Hill offered no evidence regarding defendant Lux's intentions to testify at trial, the portions of defendant Lux's confession that implicate him, or the prejudice that would result if the trials were held jointly. Indeed, the defendant only stated that a *Bruton* problem may exist and that if he testified and defendant Lux did not, his counsel would be unable to take advantage of defendant Lux's failure to testify. The possibility of a *Bruton* problem is not enough to warrant severance. Additionally, defendant Hill's argument that his counsel will be unable to comment on defendant Lux's failure to testify is not a sufficient reason for granting a severance. *United States v. Herring*, 582 F.2d 535, 542 (10th Cir.1978); *United States v. Perrin*, 580 F.2d 730, 738 (5th Cir.1978), *aff'd*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979).

Having weighed defendant Hill's evidence of prejudice against the considerations of judicial economy, the court has concluded that severance is not warranted. Therefore, defendants' separate motions for severance are denied.

*Defendants' Separate Motions to Suppress Evidence*

■ As part of a nationwide drug interdiction program, postal inspectors and DEA officials make random investigations of United States Express Mail packages, matching them against an Express Mail Profile, which is used to detect express mail packages likely to contain illegal drugs. This "Drug Package Profile" includes the following elements:

1. Size and shape of the mailing.
2. Package heavily taped and attempts to close or seal all openings.
3. Hand printed or written labels.

4. Unusual return name and addresses.
5. Unusual odors coming from package.
6. Fictitious return addressee.
7. Destination of parcel.

In addition to these elements, the inspectors also pay close attention to the city of origination and to the addressee's name (*e.g.*, if multiple packages are sent to a single address but each package is addressed to a different individual). If a package matches one or more of the elements of the profile, the package is detained and subjected to a canine sniff. If the dog alerts to the package, the package is sent to its destination city under controlled conditions. Upon arrival, the package is once again subjected to a canine sniff. If the dog alerts to the package, the postal inspector obtains a search warrant. The package is then searched pursuant to a warrant. If illegal drugs are found, the inspector generally obtains authorization for a signalling device to be placed in the package. After the package is delivered to the addressee (or to the person to whom the addressee delivers the package), a search warrant for the residence is obtained and executed.

In the case at bar, the package addressed to defendant Lux and delivered by her to defendant Hill was detained at the Los Angeles Airport (LAX) on October 14, 1988, along with seventeen other packages matching various criteria of the Drug Package Profile. Of the eighteen packages detained, the dog alerted to nine, including the package at issue in this case. Of those nine packages, three were eventually found to contain cocaine,[1] including the package addressed to defendant Lux and delivered by her to defendant Hill. The package at issue in this case was detained at LAX because it met three of the Drug Package Profile criteria and because it originated in a city known to be a source for illegal drugs—Los Angeles. Specifically, the package at issue had a handwritten label, the return addressee was fictitious, and the

---

1. One package contained steroids, and other packages contained video tapes and clothes. Notably, the dogs trained to locate narcotics will alert to trace amounts on clothes and objects.

Therefore, although six of the packages did not contain illegal drugs, they may have in fact

package's destination was Kansas City, a known destination city for illegal drugs.[2]

Pursuant to the normal procedure, the package at issue was delivered to the Airport Mail Facility at Kansas City International Airport under controlled conditions on October 15, 1988, a Saturday. On Monday, October 17, 1988, Postal Inspector Stewart picked up the package and subjected it to a canine sniff. The dog alerted to the package. Therefore, Inspector Stewart obtained a search warrant, and pursuant to that warrant, searched the package. The package contained approximately 2.5 kilos of cocaine. Inspector Stewart then obtained authorization to place a signalling device inside the package. The package was delivered to the addressee, defendant Lux, at her place of employment in Kansas City, Missouri, and defendant Lux subsequently delivered it to defendant Hill at his residence in Kansas City, Kansas. Defendant Hill's residence was searched pursuant to a warrant, the package was recovered, and defendant Hill was arrested.

Defendants move to suppress the evidence of the cocaine, claiming the detention of the package did not meet the requirements of *Terry v. Ohio* and was therefore unreasonable and in violation of the fourth amendment. Although defendants originally argued that the detention was for an unreasonable amount of time, defendants abandoned this argument at the November 30th hearing. Defendants now argue that the Drug Package Profile did not provide the authorities with sufficient specific, articulable facts upon which they could base a reasonable suspicion that the package contained contraband. *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

As far as the court can determine, the issue presented by defendants' motions—Is

the detention of an express mail package, based on its matching certain Drug Package Profile elements, reasonable under the fourth amendment?—is one of first impression in this district and in this circuit. Answering the question posed requires a two-part analysis. First, the court must determine whether the *Terry* requirements apply to the detention of a package placed in the possession of the post office for express delivery. Second, if *Terry* applies, the court must determine whether the detention was reasonable; *i.e.*, was it based on specific, articulable facts which gave rise to a reasonable suspicion that the package contained contraband?

In *Terry*, the Supreme Court approved limited intrusions on an individual's personal security based on less than probable cause when the authorities had a reasonable, articulable suspicion that the person had been or was about to be engaged in criminal activity. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. The requirements of *Terry* have also been applied in cases concerning brief seizures of luggage from a suspect's custody, *Place*, 462 U.S. at 702, 103 S.Ct. at 2642, and brief detentions of luggage placed in the baggage check area of an airline, *United States v. Beale*, 731 F.2d 590, 596 (9th Cir.1983), *reh'g granted*, 728 F.2d 411 (9th Cir.), *on reh'g*, 736 F.2d 1289 (9th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Moreover, in *United States v. Van Leeuwen*, 397 U.S. 249, 252, 90 S.Ct. 1029, 1032, 25 L.Ed.2d 282 (1970), the Supreme Court held that detention of first-class mail on the reasonable suspicion that it contained contraband did not violate the fourth amendment.[3] Finally, although a canine sniff is neither a search nor a seizure, *United States v. McCranie*, 703 F.2d 1213, 1218 (10th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983), a majority of courts have either found the existence of

---

contained trace amounts to which the dog alerted.

**2.** The Postal Inspection Service has determined through data compiled as a result of on-going investigations that Los Angeles is a source city for illegal drugs and that Kansas City is a common destination for those drugs.

**3.** Although the *Van Leeuwen* Court stated that *Terry* went further than the Court needed to go in *Van Leeuwen*, the Court nevertheless used the *Terry* language of "reasonable suspicion" when upholding the search.

a reasonable suspicion or required a reasonable suspicion that a package or piece of luggage contained contraband when upholding a canine sniff of the package/luggage for narcotics.[4]

■ Because the postal inspectors detain packages suspected to contain narcotics for the purpose of having these packages subjected to canine sniffs, the court has decided to follow those courts holding that a reasonable suspicion is a necessary prerequisite for subjecting a package to a canine sniff. Accordingly, the court holds that *Terry* applies to the detention of express mail packages placed in the possession of the post office.

The court must next decide whether the detention in this case met the *Terry* requirements. The case closest on point is *United States v. Van Leeuwen.* In *Van Leeuwen,* the authorities detained a first-class package containing coins. The authorities' detention of the package was upheld because they had a "reasonable suspicion" that the package contained contraband. This reasonable suspicion was based on three facts: (1) the nature and weight of the packages; (2) the fictitious return address on the packages; and (3) the foreign license plates of the person placing the packages into the mail. *Van Leeuwen,* 397 U.S. at 252, 90 S.Ct. at 1032. Similarly, in the case at bar, the postal inspector's suspicion was based on the following facts: (1) the return addressee and return address did not match; (2) the mailing label was handwritten; (3) the package originated in Los Angeles; and (4) the package's destination was Kansas City. This court, like the Court in *Van Leeuwen,* finds that the authorities at LAX had sufficient facts to support a reasonable suspicion that the

package at issue in this case contained contraband; thus, the detention of the package for the purpose of subjecting it to a canine sniff was reasonable under the fourth amendment.

The Drug Package Profile does not contain completely arbitrary criteria. Instead, the profile was developed at a national level and was based on information gleaned from national investigations of narcotics mailings. Although the court recognizes that some of the profile's elements, standing alone, would not be sufficient to form the basis for a reasonable suspicion that a package contains narcotics,[5] in combination, these elements do provide the authorities with specific facts sufficient to form the required reasonable suspicion.

In the present case, the combination of the four elements listed above provided the LAX authorities sufficient specific, articulable facts to form a reasonable suspicion that the package addressed to defendant Lux contained contraband. First, the origination and destination cities of the package are a cause for suspicion: the authorities know from prior investigations that Los Angeles is a source city for drugs and that Kansas City is a known recipient city for those drugs. Second, and of special import, the authorities discovered that the return addressee and the return address did not match: while the address was a good one, no addressee of "Nail Trap" was located at the address. Defendants argue that the authorities' investigation of the return address was insufficient because they did no more than check the Hanes directory and the telephone directory. We find the investigation to be sufficient to establish that the package had a fictitious return addressee name. Third, the mailing

**4.** *See, e.g., United States v. Whitehead,* 849 F.2d 849, 855–56 (4th Cir.1988); *United States v. Alpert,* 816 F.2d 958, 961 (4th Cir.1987); *United States v. Quinn,* 815 F.2d 153, 159 (1st Cir.1987); *United States v. Erwin* 803 F.2d 1505, 1509 (9th Cir.1986); *United States v. West,* 731 F.2d 90 (1st Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 956, 83 L.Ed.2d 963 (1985); *United States v. Beale,* 731 F.2d 590 (9th Cir.1983); *United States v. Williams,* 726 F.2d 661, 663 (10th Cir.), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3523, 82 L.Ed.2d 830 (1984); *United States v. Klein,* 626 F.2d 22, 27 (7th Cir.1980); *United States v. Freymuller,*

571 F.Supp. 61, 63 (N.D.Ill.1983). *But see United States v. Lovell,* 849 F.2d 910, 913 (5th Cir. 1988) (expectation of privacy does not extend to airspace around luggage); *United States v. Goldstein,* 635 F.2d 356, 361–62 (5th Cir.1981), *reh'g denied,* 640 F.2d 385 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981).

**5.** For example, the following elements, standing alone, might not meet the *Terry* standard: the size and shape of a package, its hand written label, its destination, or an unusual return name/address.

label was handwritten, which the authorities have found to be a common element in drug mailings. In combination, the court concludes that these elements constituted specific, articulable facts as required by *Terry.*

The court also concludes that the Drug Package Profile must be viewed in a different light than the Drug Courier Profile. In *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), the Court, while not prohibiting reliance on the profile nor deeming it unconstitutional, "held that drug enforcement agents' reasonable suspicion could not rest solely on factors that, although in conformity with the drug courier profile, 'describe a very large category of presumably innocent travelers.' " *United States v. Erwin,* 803 F.2d 1505, 1511 (9th Cir.1986). Although the Drug Package Profile and the Drug Courier Profile are somewhat similar in purpose, the use of the Drug Package Profile differs in one significant respect from the Courier Profile, which makes the authorities' sole reliance on it reasonable: the detention of a package based on the Drug Package Profile is an extremely limited intrusion on the person's right of privacy. As the Supreme Court instructed in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983):

> The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent. The seizure may be made after the owner has relinquished control of the property to a third party.... Given the fact that seizures of property can vary in intrusiveness, some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime.

*Id.* at 705–06, 103 S.Ct. at 2643–44 (Notably, the Court made reference to the *Van Leeuwen* case as being an example of a less intrusive seizure. *See id.* at 705 n. 6, 103 S.Ct. at 2643–44 n. 6.) Thus, while the authorities cannot rely solely on the elements of the Drug Courier Profile which describe a large category of innocent travelers, the court concludes that the authorities detaining packages based on the Drug Package Profile criteria, which also can describe a large category of packages, are not so constrained. The government's interest in drug enforcement strongly counterbalances the minimal intrusion resulting from a package's detention and thus justifies a more lenient approach.

In sum, the court holds that *Terry's* requirements apply to a detention of an express mail package in the possession of the post office for the purpose of subjecting the package to a canine sniff. Additionally, the court holds that in the present case, the authorities at LAX had specific, articulable facts which gave rise to a reasonable suspicion that the package addressed to defendant Lux and ultimately delivered to defendant Hill contained illegal drugs. Consequently, the detention and canine sniff of the package were reasonable under the fourth amendment. Defendants' separate motions for suppression of the evidence of the cocaine are therefore denied.

IT IS THEREFORE ORDERED that defendant Lux's motion to suppress the statement she made during her interrogation on October 18, 1988, is denied.

IT IS FURTHER ORDERED that defendant Lux's and defendant Hill's separate motions for severance are denied.

IT IS FURTHER ORDERED that defendant Lux's and defendant Hill's separate motions to suppress evidence are denied.