UNITED STATES of America, Plaintiff,

v.

Rick CANTRALL, Terry Cantrall, and Kenny Cantrall, Defendants.

Crim. A. No. 90–10030–01, 02, 03.

United States District Court,
D. Kansas.

March 21, 1991.

Lanny Welch, U.S. Atty., Wichita, Kan., for U.S.

Roger L. Falk, Wichita, Kan., for Rick Cantrall.

Steve Gradert, Wichita, Kan., for Terry Cantrall.

Charles E. Millsap, Wichita, Kan., for Kenny Cantrall.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on several pretrial motions filed by the defendants. The court held a hearing on Friday, March 1, 1991. The court has received the post-hearing submissions of the parties and is prepared to rule.

The defendants, brothers Rick, Terry and Kenny Cantrall, are charged with conspiracy to distribute cocaine and attempt to possess cocaine with the intent to distribute. Superseding Indictment, Counts I and II. Rick and Terry Cantrall are charged with using extortionate means to attempt to collect an extension of credit. *Id.* Count III. Rick, Terry and Kenny Cantrall are charged with the unlawful carrying or use of a firearm during and in relation to a drug trafficking crime. *Id.* Count IV.

## I. Discovery Motions

### A. *Rick Cantrall's motion for discovery (Doc. 44)*

Defendants Kenny Cantrall (Doc. 51) and Terry Cantrall (Doc. 70) joined in this motion. The court has previously held a hearing on this motion, which sought certain information regarding the Sedgwick County Drug Detection Dog, Wenka. Following the hearing, the court granted in part and denied in part the discovery requests. The court did not enter a written order at that time.

### B. *Motion to compel discovery (Doc. 82)*

All three defendants seek disclosure of information regarding confidential informants. In response, the government states that it knows of no informants in this case. The motion shall therefore be denied.

### C. *Motion for Brady and Rule 16 evidence (Doc. 85)*

The government responds that it is aware of no *Brady* material and it has disclosed all Rule 16 material. The motion shall be granted to the extent it seeks the Rule 16 material already provided.

## II. Motion to Suppress (Doc. 77, filed by Rick Cantrall; Doc. 79, filed by Kenny Cantrall; Doc. 80, filed by Terry Cantrall)

Defendant Rick Cantrall moves to suppress the contents of the Express Mail package addressed to him and intercepted by the United States Postal Inspection Service on March 30, 1990. Rick Cantrall further seeks suppression of all physical evidence seized from the search of his residence at 1737 North Colorado, Wichita, Kansas on March 30, 1990. Defendant Terry Cantrall moves to suppress all evidence resulting from the search of the residence located at 1737 North Colorado. Defendant Kenny Cantrall moves to suppress both the contents of the Express Mail package mailed to his brother and all evidence seized from the residence located at 1737 North Colorado. All defendants seek a *Franks* hearing. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

### A. Standing

#### 1. Rick Cantrall

Rick Cantrall argued in his motion that he has standing to object to the seizure of the items, since he was the addressee of the package and was leasing the residence at 1737 North Colorado on the date of the search. The government did not address Rick's standing in its response brief and did not challenge Rick's standing at the hearing. The court finds that Rick does have standing to challenge the search of the package and the residence.

#### 2. Terry Cantrall

Terry Cantrall argues that he has standing to object to the search of the residence where he lived with his brother. Terry's motion to suppress is aimed at the search of the residence. Terry is not challenging the search of the package per se; however, the detention of the package, the canine sniff, and search of the package bear on the information contained in the application for search warrant for the residence. The government argued that Terry has no standing to challenge the search of the package which was sent to his brother.

878

The government did not specifically challenge Terry's standing to object to the search of the residence. The court finds that Terry does have standing to challenge the search of the residence where he lived.

### 3. Kenny Cantrall

■ Kenny Cantrall moves to suppress all evidence resulting from the search of the Express Mail package and the residence located at 1737 North Colorado. Kenny Cantrall did not address the issue of standing in his motion. The government argued that Kenny has no standing to challenge the search of the Express Mail package of which he was neither sender nor addressee. The government argued that Kenny must show that he had a proprietary or possessory interest in the package while in the United States mails; that he had exclusive control over the package; or that he took precautions to evince a reasonable expectation of privacy.

■ Fourth amendment rights to be free from unreasonable searches and seizures are personal and may not be asserted vicariously. *Rakas v. Illinois,* 439 U.S. 128, 133-34, 99 S.Ct. 421, 424-25, 58 L.Ed.2d 387 (1978). A defendant may not challenge a search or seizure unless he demonstrates that his own constitutional rights have been infringed. *United States v. Rubio-Rivera,* 917 F.2d 1271, 1274 (10th Cir.1990). Even if the fourth amendment rights of a third party have been violated, a court may not suppress evidence unless the defendant has met his burden of proving that he had a personal fourth amendment interest that was implicated by the search. *Id.; United States v. Rascon,* 922 F.2d 584, 586 (10th Cir.1990); *United States v. Erwin,* 875 F.2d 268, 270 (10th Cir.1989).

■ The existence of a personal fourth amendment right depends on whether the individual has exhibited a subjective expectation of privacy and whether that subjective expectation of privacy is one that society is prepared to recognize as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Rascon,* 922

F.2d at 586; *United States v. Rubio-Rivera,* 917 F.2d at 1274. To decide whether a reasonable expectation of privacy exists, the court should consider concepts of property law, bearing in mind that "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." *United States v. Arango,* 912 F.2d 441, 445 (10th Cir. 1990) (quoting *Rakas,* 439 U.S. at 143, 99 S.Ct. at 430). Although neither ownership nor lawful possession are determinative, they are often dispositive factors. *Id.*

The facts on the standing issue are uncontroverted. The Express Mail package was addressed to Rick Cantrall. Kenny has not claimed any possessory or ownership interest in this package. Rick and Terry Cantrall lived in the residence at 1737 North Colorado, which is apparently leased by Rick. Kenny Cantrall asserts, and the court has accepted as true, that he did not reside at the North Colorado home, but was merely visiting at the time of the search. *See* Doc. 90–92 (defendant Kenny Cantrall's motion to sever, brief in support, and affidavit of counsel).

The court concludes that Kenny lacks standing to challenge either the search of the package or the search of the residence. The package was not addressed to Kenny. He has exhibited no expectation of privacy in the package. Any expectation of privacy in a package not addressed to him would not be reasonable. Kenny has argued that he did not live at the North Colorado residence with his brothers. Kenny therefore would have no reasonable expectation of privacy in the home sufficient to give him standing to challenge the search.

### B. Detention of the Package

■ Rick Cantrall argues that the package was detained and submitted to the narcotics detection dog without a reasonable suspicion that contraband was contained in the package, in violation of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This argument raises the issue of the existence and validity of the Express Mail narcotic profile. Prior to obtaining a search warrant for the pack-

age, the Postal Service removed the package from the mail stream. The package met the Express Mail narcotic profile in that the sender was not known to reside at the address listed on the package and the package contained a handwritten label with the origin from a known source city of narcotics to a residential area. Later, the package was subjected to Wenka, the narcotics detection dog, who alerted on the package.

A temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity. *United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir.1990). In *Lux*, the Tenth Circuit recognized the Postal Inspection Service's drug package profile for Express Mail packages. There are seven characteristics to this profile:

(1) the size and shape of the package; (2) whether the package is taped to close or seal all openings; (3) handwritten or printed labels; (4) unusual return name and address; (5) unusual odors coming from the package; (6) fictitious return address; and (7) destination of the package. 905 F.2d at 1380 n. 1. In addition to these seven elements, Postal Inspectors also pay attention to the city of origin and to the addressee's name (for example, if multiple packages are sent to a single address but each package is addressed to a different individual). *See United States v. Hill*, 701 F.Supp. 1522, 1526 (D.Kan.1988), *aff'd in part sub nom., United States v. Lux*, 905 F.2d 1379 (10th Cir.1990).

In *Lux*, the fact that the package met three of the factors of the profile gave the authorities sufficient reasonable suspicion to detain the package for a day and a half to subject it to the drug detection dog. *Lux*, 905 F.2d at 1382. *See also Hill*, 701 F.Supp. at 1528 (identifying four factors for same package). Chief Judge O'Connor stated in *Hill* that the following factors, standing alone, might not be sufficient—the size and shape of a package, its hand written label, its destination, or an unusual return name/address—but that in combination, these elements provide specific facts sufficient to form the required reasonable suspicion. *Hill*, 701 F.Supp. at 1528 & n. 5.

From the matters presented to the court, the following narcotic profile factors were met: (1) the mailing label was handwritten; (2) the return addressee and return address did not match; and (3) the destination of the package was a residential address in Wichita. The presence of these factors provides reasonable suspicion justifying the brief detention and the use of the narcotics detection dog. Defendant Rick Cantrall argued at the hearing that a majority of the seven factors should be required before reasonable suspicion to detain a package is present. In *United States v. Lux*, 905 F.2d at 1382, the fact that three of the profile factors were met gave reasonable suspicion to subject the package to a canine sniff. Rick's argument that a majority of the factors are required was rejected in *Lux*.

In addition to the factors mentioned above, the following additional factors were present. First, there had been numerous Express Mail deliveries to Rick Cantrall. Approximately 35 Express Mail packages had been to delivered to Rick at one of three addresses in Wichita since June 1989. Fifteen were delivered to Rick at the North Colorado address since January 1990. Second, few of the return addresses were determined to be existing addresses. Third, of those existing addresses, the sender was not known to live there. There is no allegation that the information on the falsity of the purported sender was unreliable. Finally, all of the return addresses were from Chatsworth, California, a known narcotic source area in southern California. The court specifically rejects the defendant's argument that Chatsworth and Canoga Park are not source areas for drugs. Defendants' Exh. 6. Both are communities in the Los Angeles area, which has been identified as a source city for drugs. *See Hill*, 701 F.Supp. at 1526, 1527 n. 2.

Rick Cantrall argues that no Express Mail narcotic profile exists in writing. The court does not believe that written evidence as such is necessary to show the existence of an Express Mail narcotic profile. The profile has been recognized by this District

and, more importantly, by the Tenth Circuit Court of Appeals. Since other factors were present in addition to those specifically identified in *Lux*, the Postal Inspector's suspicion was all the more reasonable.

## C. Merits of the Motion to Suppress

### 1. Search of the Package

The affidavit of Postal Inspector Tom Pappas in support of the application for a search warrant for the package provides as follows. An Express Mail narcotic profile has been developed identifying factors which are often present with Express Mail packages used to transport controlled substances. The profile identifies packages coming from source cities, such as southern California and southern Florida; the packages will have handwritten labels address to residential addresses; the packages will often bear fictitious return addresses and/or names; the packages will often bear fictitious or unknown addressee names; the packages will often appear to be overly taped at package seams; and the packages will arrive for delivery on a repeated basis. Aff. ¶ 2.

On March 30, 1990, Inspector Rolland of the Postal Inspection Service was contacted by Juan Macias of the General Mail Facility in Wichita concerning an Express Mail package which had been mailed from Canoga Park, California the day before. The package fit the Express Mail narcotic profile. The sender was not known to reside at the address on the package. The package had a handwritten label with origin being from a known source city to a residential address. Approximately 35 Express Mail packages had been delivered to the addressee at one of three addresses in the Wichita area since June 1989. Fifteen of those packages had been delivered to the addressee at 1737 North Colorado, Wichita, Kansas since January 1990. Of these packages, all of the return addresses were from Chatsworth, California, a known source area for narcotics. The Postal Service attempted to verify the return addresses and found that of the few addresses that were determined to be existing addresses, the sender was not known to live at the address. A check with local police revealed that there had been complaints from the neighbors of the addressee at 1737 North Colorado, that there had been many people coming and going at all times of night, staying for only a short time. It was learned that the addressee, Rick Cantrall, and his brother Terry, also believed to live at 1737 North Colorado, both have prior arrests for narcotic convictions. Aff. ¶ 3.

The package was removed from the mail stream at the Express Mail office in Wichita. The package was addressed to Rick Cantrall at the above address. The sender was Ronnie Pasco, 19720 Septo Street, Chatsworth, California 91311. The package was rectangular in shape, measuring approximately 11¼" × 9" × 8½", weighing 3 pounds, 13.5 ounces, bearing Express Mail Label OB082988708, with a Canoga Park, California, March 29, 1990, $5.25 postage meter strip and a $10.00 postage meter strip. Aff. ¶ 4.

At approximately 10:50 a.m., March 30, 1990, Detective Rick Hodge utilized Wenka, a narcotics detection dog owned by the Sedgwick County Sheriff's Department, to locate scents emitting from the package. Wenka alerted on the suspect package, indicating contraband was contained inside. Aff. ¶ 5. According to Detective Hodge, Wenka is trained to locate THC, cocaine and heroin. Wenka had been utilized for the previous year and a half. In using Wenka for both real and practical situations, Wenka has correctly alerted approximately 90% of the time. Aff. ¶ 6. Based on this information, Magistrate Wooley authorized a search warrant for the package.

The affidavit of Postal Inspector Allen L. McHenry in support of the application for search warrant for the residence repeated much of the same information contained in the first affidavit. The sender of the package was listed as Ronnie Pasco, 19720 Septo Street, Canoga Park (instead of Chatsworth), California 91311. Pursuant to the search warrant for the package, Inspector Pappas opened the above-described package. Contained inside was one kilogram of suspected cocaine and approximately $4,000.00 in United States currency. The substance field-tested positive for cocaine. All but approximately nine grams of the

kilogram was removed from the package and the package was resealed for a controlled delivery. A controlled delivery of the package was made by Inspector Pappas to 1737 North Colorado at 7:05 p.m. Rick Cantrall signed for the package. The package was taken into the residence. Law enforcement officials maintained surveillance and determined that the package had not left the address. Based on this information, Magistrate Wooley authorized a search warrant for 1737 North Colorado.

At approximately 7:15 p.m., law enforcement officers executed the second search warrant on the residence. Law enforcement officials found the package had been opened and saw Terry Cantrall attempting to flush the contents of the package down the toilet. Various items were seized. The three individuals present, Rick, Terry and Kenny Cantrall, were arrested.

Rick Cantrall contends that false and inaccurate information was contained in the affidavit supporting the search warrant. The defendant challenges several assertions contained within the affidavit, namely, the 90% accuracy figure for Wenka, incorrect criminal history on Rick Cantrall, false information regarding the number of complaints received by the Wichita Police, and false information that the package came from a known source city for drugs.

In the affidavit for the search warrant, Inspector Pappas stated that according to Detective Hodge, Wenka has correctly alerted approximately 90% of the time for both practical and real situations. The government has conceded that the 90% figure is not correct. Based on the discovery materials which the court previously ordered the government to produce, both sides have computed Wenka's accuracy. The defendants have calculated Wenka's accuracy to be from 52% to 65%. The government calculates Wenka's accuracy to be between 66% and 74%.

The affidavit provided that Rick Cantrall had prior arrests for narcotic violations. The government admits that the information supplied to Inspector Pappas was inaccurate. The arrest that was listed as Rick's was actually the arrest of his broth-

er Terry for marijuana possession, which occurred on October 2, 1978.

The defendants argued at the hearing that the allegation in the affidavit that complaints (plural) has been received by local police was false. The record apparently reveals only one complaint has been received by the Wichita Police. The defendants also dispute whether either Chatsworth or Canoga Park, California are known source areas for narcotics activity.

■ In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), the Supreme Court held that: [when] the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Under *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684, it is the burden of the defendants to demonstrate deliberate falsity or reckless disregard for the truth by the affiant. *See United States v. Sullivan*, 919 F.2d 1403, 1424 (10th Cir.1990).

■ To justify a *Franks* hearing, there must be allegations of deliberate falsehood or of reckless disregard for the truth. The portion of the affidavit which is allegedly false should be identified with specificity. If, when the material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient contents in the warrant affidavit to support a finding of probable cause, no hearing is required. *Franks v. Delaware*, 438 U.S.

882

154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978).

■■■ Rick Cantrall argues that the difference between the statement regarding Wenka's accuracy made in the affidavit and the actual records is a material discrepancy. Further, Rick argues that the government knew the information was inaccurate when it supplied that information to the magistrate.

There is nothing to indicate that the statement regarding Wenka's accuracy was made intentionally. The affidavit of Inspector Pappas states that the information about Wenka was provided by Detective Hodge. The affidavit provides that Wenka has correctly alerted *approximately* 90% of the time. At the very most, the statement regarding Wenka's accuracy reflects a reckless disregard for the truth. It is not argued that law enforcement officials should be required to provide the magistrate with statistics to support Wenka's accuracy. The court believes that any percentage over 50%, along with the fact that the dog is trained and certified in narcotics detection, should be sufficient to establish Wenka's abilities to correctly detect narcotics. Either set of figures (the 52% to 65% computed by the defendants or the 66% to 74% computed by the government) would be sufficient to support a finding of probable cause to suspect that illegal narcotics would be found in the package.

The misstatement regarding Rick Cantrall's prior arrest was made, at most, with reckless disregard for the truth. It is not disputed that Terry Cantrall had a prior arrest for marijuana possession. Rick has had prior arrests, but none were for drugs. The statement in the affidavit that the police have received "complaints" from the neighbors is apparently erroneous, since only one complaint has been disclosed to defense counsel. Finally, the court has previously concluded that Chatsworth and/or Canoga Park, California are known source areas for narcotics.

■■■ The court finds by a preponderance of the evidence that the testimony of the affiant before the magistrate in the present case was, at most, recklessly false with respect to Wenka's accuracy, Rick Cantrall's arrest record and the receipt of complaints (plural) by the Wichita Police. After excising the false information, the remaining information in the affidavit supplies probable cause for the search. The package met the Express Mail narcotics profile, as discussed in detail above. Wenka, who is trained to locate THC, cocaine and heroin, alerted on the package. These facts amply support a finding of probable cause.

## 2. Search of the Residence

### a. Rick Cantrall

Rick Cantrall argues that all evidence seized from the residence is inadmissible as fruit of the poisonous tree. This argument fails since the search warrant for the package was supported by probable cause. In addition, the substance contained in the package field-tested positive for cocaine. This substance and $4,000 in cash were taken into the residence by Rick Cantrall.

### b. Terry Cantrall

Terry Cantrall moves to suppress all evidence resulting from the search of the residence located at 1737 North Colorado. Terry's motion hinges in great part on the outcome of Rick's motion to suppress the package and its contents.

The court has already rejected the arguments regarding the Express Mail narcotics profile. The package sent to Rick Cantrall met enough of the profile factors to provide reasonable suspicion to detain the package. The court has already rejected the arguments concerning Wenka's accuracy at detecting narcotics.

Terry notes the affidavit's repeated allegations that the package and others similar to it came from source areas for narcotics activity (Chatsworth and/or Canoga Park, California). Terry argues that Chatsworth and Canoga Park are two separate, adjacent, middle to upper class communities in the Los Angeles area. Terry argues that, unlike other parts of the Los Angeles area, Chatsworth and Canoga Park are not

known as source areas for narcotics. The court has already rejected this argument.

At the hearing, counsel for Terry Cantrall noted that although the same return street address was shown on both affidavits, that address was stated to be in different cities. In the second affidavit, the return address is stated as being in both Chatsworth (¶ 3) and Canoga Park (¶ 4). This discrepancy is not, however, fatal to a finding of probable cause.

■■■ The affidavit stated that both Rick and Terry Cantrall had prior arrests for narcotics violations. Terry has a prior conviction for possession of marijuana, but has never been arrested for a "narcotic" violation as that term is defined under 21 U.S.C. § 802(17). While it is true that the definition of "narcotic" does not include marijuana, the court does not find any falsity. The court notes that it is quite common to refer to drugs generically as "narcotics." [1] Completely excising the reference to prior convictions of both Rick and Terry is not fatal to a finding of probable cause.

### III. Motion to Sever (Doc. 90)

■■■ Defendant Kenny Cantrall moves for an order severing his case from that of the other defendants, arguing that he will be prejudiced by a joint trial. Specifically, Kenny Cantrall argues that the government will be introducing evidence of conduct by Rick and Terry Cantrall which occurred after the indictment in this case which will show: (1) that Terry and Rick Cantrall are participants in cocaine trafficking; (2) that Terry and Rick attempted to collect a drug debt owed to them; (3) that Rick engaged in a taped conversation in which he discussed his drug dealings; (4) that Terry and Rick "fronted" cocaine to an individual; and (5) that Terry and Rick are identified as people who are dealing the drugs. The government will introduce evidence of Terry and Rick's prior felony convictions while offering no such evidence against Kenny. Finally, Kenny argues that there is an extreme disparity of evidence between the government's case against Terry and Rick and its case against Kenny. Kenny argues that the only real evidence of guilt against Kenny is his presence in the home of Rick and Terry when the express mail package was delivered and when the search warrant was executed moments later.

■■■ The decision to sever the trials of persons indicted together is addressed to the trial court's discretion. *United States v. Dill*, 693 F.2d 1012, 1015 (10th Cir.1982). "In determining the merits of a motion for severance, the trial court must weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir. 1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2865, 2866, 64 L.Ed.2d 854 (1980). Defendants bear a heavy burden of proving prejudice sufficient to warrant severance. *United States v. Huff*, 699 F.2d 1027, 1030 (10th Cir.), *cert. denied*, 461 U.S. 937, 103 S.Ct. 2107, 77 L.Ed.2d 312 (1983).

The government filed a written response objecting to severance. After hearing the statements of counsel, the court granted Kenny's motion to sever at the hearing.

IT IS BY THE COURT THEREFORE ORDERED that defendant Rick Cantrall's motion for discovery (Doc. 44) joined in by defendants Terry Cantrall (Doc. 70) and Kenny Cantrall (Doc. 51) is hereby granted in part and denied in part.

IT IS FURTHER ORDERED that the defendants' motion to compel discovery (Doc. 82) is hereby denied.

IT IS FURTHER ORDERED that defendants' motion for *Brady* and Rule 16 evidence (Doc. 85) is hereby granted.

IT IS FURTHER ORDERED that defendant Rick Cantrall's motion to suppress (Doc. 77) is hereby denied.

---

**1.** In fact, the court and perhaps the parties have used the word "narcotic" generically throughout this proceeding. Wenka is referred to as a "narcotic detection dog," when in fact she is trained to locate THC, cocaine and heroin. Cocaine and heroin are both narcotics. *See* 21 U.S.C. ¶ 802(17) ("narcotic drug" includes opium, opiates, and cocaine). THC is not.

884

IT IS FURTHER ORDERED that defendant Terry Cantrall's motion to suppress (Doc. 80) is hereby denied.

IT IS FURTHER ORDERED that defendant Kenny Cantrall's motion to suppress (Doc. 79) is hereby denied.

IT IS FURTHER ORDERED that Kenny Cantrall's motion to sever (Doc. 90) is hereby granted.