**The STATE of Ohio**

v.

**KNIGHT.**

Court of Common Pleas of Ohio,
Licking County.

No. 96–CR–407.

Decided Feb. 25, 1997.

80

*Kenneth Oswalt*, Licking County Assistant Prosecuting Attorney, for plaintiff.

*Craig Baldwin*, for defendant.

GREGORY L. FROST, Judge.

This matter came on for a hearing this 14th day of January, 1997, upon the motion to suppress filed by defendant Todd Adam Knight on December 30, 1996 and upon the memorandum contra filed by the state of Ohio on January 13, 1997.

The state of Ohio presented the testimony of two witnesses. The defendant elected to present the testimony of the defendant only on the limited issue of standing. From the testimony adduced, this court finds the facts to be as follows:

## FACTS

On October 24, 1996, two similarly wrapped packages were received by the postal authorities at Port Columbus Airport. Because of the suspicious nature of the packages, an employee brought the packages to the attention of James T. Bogden, a United States Postal Inspector with seven years of experience at the time. The packages had been introduced into the postal system on October 23, 1996 at Eugene, Oregon. If the packages were not delayed in any manner, the packages would be expected to be delivered to their destination on October 25, 1996. One package was addressed to "Bill Harris, 418 W. Broadway, Granville, Ohio 43023" and bore the return addressed of "Todd Harris, 1596 Riverside Rd., Eugene, Oregon." The second identical package was address to "L.J.B., 59 N. 8th St., Newark, Ohio 43055" and provided a return address of "Tom Harris, 1256 Riverside Rd., Eugene, Oregon."

Inspector Bogden determined that the packages appeared to be suspicious because they were of the same size and appearance, they were both mailed from Eugene, Oregon, they were both heavily taped, a distinct odor emanated from both packages, both had waiver of signature endorsements indicating that the packages could be left at the address to which they were mailed without first obtaining the signature of the addressee, the addresses were handwritten, and the return addresses for each were different but were written with what appeared to be the same handwriting.

From his training and experience Inspector Bogden became suspicious of the packages. Oregon is a state from which narcotic substances being transmitted by mail have been intercepted in the past. The packages were heavily taped, which is a characteristic of packages containing illegal narcotic substances. The heavy taping prevents odors from leaking and, despite the taping, odors were leaking from the boxes. Both mailings had waiver of signature endorsements which were unusual, since it cost approximately $60 to express mail the containers from Eugene, Oregon. With this suspicion created by the initial profiling, Inspector Bogden conducted further investigation that revealed that the return addresses in Eugene, Oregon, were both fictitious.

Special Agent Amy Allen, who was employed by the Ohio Attorney General's Bureau of Criminal Investigation and Identification, was then summoned. She was assigned to the Drug Enforcement Administration's Columbus Airport Narcotic Task Force as a dog handler. She assisted with drug interdiction at the Columbus airport and worked in cooperation with the postal authorities.

A controlled search was conducted by the drug-detecting dog, Chelsea, and Amy Allen. Six boxes were laid on the floor and only one was a suspicious box from Oregon. The dog alerted to the Oregon package. Another controlled search was conducted with five boxes that were different from the first test and the other package from Oregon. Again Chelsea alerted to the other suspicious package from Oregon.

Armed with the foregoing facts, Inspector Bogden prepared an affidavit, sought a federal magistrate, and was issued a search warrant to open the two packages. They were opened and were found to contain psilocybin mushrooms, a Schedule I controlled substance.

Because an argument was advanced that Chelsea, the dog used, was not trained to alert on psilocybin mushrooms, additional testimony was provided by Agent Allen concerning the training and expertise of her dog. The dog was trained in kennels in Indiana, where the dog was provided over four hundred hours of drug interdiction specialization. The dog was then introduced to Agent Allen and another one hundred twenty hours of joint training with the dog and the handler were performed. The dog needed a score of eighty percent for certification from the kennel; the dog obtained that certification. Chelsea was also certified in accordance with the Ohio Police Officers Training Academy standards. Allen testified that the dog had no false alerts since the kennel certification through the date of the search in question. The dog was trained to alert to methaqualudes, cocaine, heroine, and marijuana, all in minute amounts. Chelsea was not trained to respond to psilocybin mushrooms. Agent Allen explained that she believed the dog alerted to the two packages because they contained trace amounts of one of the drugs for which the dog was trained. She

theorizes that during the packaging procedure, persons involved with the packaging or persons in the vicinity of the packaging had possessed or used drugs of that nature. As a result of the ultra-sensitive senses of the dog, the packages provided an alerting mechanism.

The packages were resealed and placed back into the postal stream. Under controlled conditions, the packages were delivered on October 25, 1996, the expected delivery date, and the defendant was arrested. He was charged with aggravated possession of drugs, a felony of the first degree.

Todd Knight, the defendant, testified on behalf of the defense. Because an issue was raised as to his standing to contest the search, the defendant admitted that he mailed the packages and that they were intended to be delivered to his place of residence, as well as to his friend's place of residence, who was also charged as a co-defendant.

## ISSUES

The facts of this case involve important issues that are apparent matters of first impression in Ohio but which have been argued extensively in the federal courts. The first issue is whether reasonable, articulable suspicion is needed before a postal employee can detain a package for additional investigative purposes. The second issue presented is whether the act of detaining a package and subjecting the same to a drug-detecting dog which then alerts to the packages presents probable cause under the facts of this case. And finally, an issue has been argued concerning the test for reliability of the dog used in this case.

## LAW

The first issue to be addressed is whether postal authorities are required to have reasonable, articulable suspicion that a package contains illegal substances or contraband before it can be detained for further investigation. Although there appears to be a split of federal authority on this issue, this court finds that the more persuasive argument and the better position is that the standard of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, should be applied.

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and *effects*, against unreasonable searches and seizures." (Emphasis added.) This court believes that the Fourth Amendment applies to packages placed in the postal stream. It has been held by the United States Supreme Court in *Terry* that a brief detention based upon reasonable, articulable suspicion that criminal activity is

occurring or is about to occur and that the brief detention is necessary to allow the officer to check an individual for weapons is a reasonable warrantless seizure.

The exception to the Fourth Amendment requirement that probable cause exist before a search or seizure may occur as recognized in *Terry* and its progeny is based upon the balancing of the nature and extent of the intrusion against the importance of the government's interests in justifying the intrusion. When examined in that light, this court finds that the brief detention based upon reasonable articulable suspicion of a package that is placed in the postal system is of small consequence when weighed against the competing governmental interest of investigating illegal drug trafficking. The detention, however, like the detention in *Terry*, must be based upon reasonable, articulable suspicion, premised on objective facts, that the package contains contraband or evidence of a crime. To require less as advocated by the state of Ohio would confer on law enforcement officials unbridled authority that was repugnant to the Framers of our Constitution. A temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity. This holding is in accord with several federal decisions involving detention of mail and airport luggage. See *United States v. Van Leeuwen* (1970), 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282; *United States v. Lux* (C.A.10, 1990), 905 F.2d 1379; *United States v. Hill* (D.Kan.1988), 701 F.Supp. 1522; *United States v. Place* (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110.

█ In this case, Inspector Bogden based his suspicion on the fact that the two packages met several of the characteristics of a drug package profile. Although it has been held that reasonable suspicion cannot rest solely on a drug courier profile because such a profile identifies a very large category of presumably innocent travelers, the same reasoning has been held to be inapplicable to drug package profiling. The difference between the two profilings was addressed in *United States v. Hill, supra,* wherein the court stated:

"The court also concludes that the Drug Package Profile must be viewed in a different light than the Drug Courier Profile. In *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), the Court, while not prohibiting reliance on the profile nor deeming it unconstitutional, 'held that drug enforcement agents' reasonable suspicion could not rest solely on factors that, although in conformity with the drug courier profile, "describe a very large category of presumably innocent travelers." ' *United States v. Erwin,* 803 F.2d 1505, 1511 (9th Cir.1986). Although the Drug Package Profile and the Drug Courier Profile are somewhat similar in purpose, the use of the Drug Package Profile differs in one significant respect from the Courier Profile, which makes the authorities' sole reliance on it reasonable: the detention of a package based on the Drug Package Profile is an

extremely limited intrusion on the person's right of privacy." *Id.*, 701 F.Supp. at 1529.

Indeed, there is a distinct difference involving the constitutional analysis between a drug courier profile and a drug package profile, especially when the detention of a package that has been deposited with the United States Postal Service is brief. This brief detention when compared within the overwhelming governmental interest in drug investigations and interdiction fails to provide a compelling reason to involve the protections of the Fourth Amendment. This court finds that the use of drug package profiling to provide certain specific, articulable reasons to briefly detain a package en route through the postal stream is constitutionally acceptable.

In this case, the postal inspector had at least six objective indicators from the drug package profile providing specific, articulable facts upon which the inspector based his decision to detain the packages. Although each case must be viewed on its own facts and under the circumstances then existing, many federal cases have found that fewer than six indicators provide the basis for the detention of the packages. See *United States v. Allen* (C.A.1, 1993), 990 F.2d 667 (five indicators); *United States v. Lux, supra* (three indicators); and *United States v. Hill, supra* (three indicators). There is no question that the postal inspector in the case *sub judice*, when presented with the six indicators, had sufficient reasonable, articulable suspicion to detain the packages based upon the *Terry* standards.

The focus then becomes one of reasonableness. Was the length of the detention reasonable under the circumstances? In a case involving the detention of luggage at an airport when the luggage was confiscated directly from a passenger, the United States Supreme Court found that a ninety-minute detention was unreasonable in the absence of probable cause and could not be justified on *Terry* principles. See *United States v. Place, supra.* No testimony was provided at the hearing concerning the length of time between the initial detention of the packages and the time the drug-detecting dog was utilized. Regardless of the absence of that testimony, Inspector Bogden testified that the packages would have arrived at their destination without any detention on October 25, 1996, and with the brief detention they still arrived on the expected delivery date. This court finds that a detention of packages for a period of time that does not interrupt the scheduled delivery date is reasonable. There was no interference with the defendant's anticipated date of delivery and his ultimate possession of the packages.

Once the packages were detained, a drug-detection dog was summoned. The two packages were identified by the dog as containing illegal substances or

contraband. Certainly a qualified drug-detecting dog can provide probable cause for a search warrant, and subjecting packages to a narcotics detecting canine is not a "search" within the meaning of the Fourth Amendment. It has been held that a dog "sniff" is not a search. See *United States v. Hernandez* (C.A.5, 1992), 976 F.2d 929; *United States v. Gonzalez–Basulto* (C.A.5, 1990), 898 F.2d 1011. A positive reaction by a drug-detection dog provides probable cause for a search warrant to be issued. See *United States v. Diaz* (C.A.6, 1994), 25 F.3d 392; *United States v. Seals* (C.A.5, 1993), 987 F.2d 1102; *United States v. Florez* (D.N.Mex.1994), 871 F.Supp. 1411: *United States v. Berry* (C.A.6, 1996), 90 F.3d 148. But, as was discussed in *United States v. Berry, supra,* the reliability of the dog becomes an issue:

"A positive reaction by a properly trained narcotics dog can establish probable cause for the presence of controlled substances. * * * However, for such a reaction to support a determination of probable cause, the training and reliability of the dog must be established." *Id.,* 90 F.3d at 153.

What is needed to establish reliability was the issue presented to this court by the defendant. This court agrees with the decision in *United States v. Wood* (D.Kan.1996), 915 F.Supp. 1126, 1136, wherein the court observed:

"That trained and certified dogs may occasionally make false alerts is a fact, which in this court's opinion, does not detract from the accepted notion that a certified dog's alert creates a 'fair probability' of contraband being present. Both Tenth Circuit and Fifth Circuit precedent recognize that a probable cause showing must at a minimum prove that the dog is trained and currently certified. There may be circumstances where a more complete investigation is required, because the reliability presumed from certification and training is subject to question. These may include that the dog's training or certification was substandard, that the health of the dog was such as to possibly affect reliability, and the circumstances of the particular search raise issues regarding the dog's reliability."

This court finds that reliability is initially proven by evidence of training and certification. The presumption of reliability obtained from the training and certification evidence may be thereafter attacked by evidence focused upon the training procedures, certification standards, or other factors, such as the health of the dog, which relate to the issue of reliability.

In this case, the evidence provided a basis for finding that Chelsea was reliable, and no evidence was presented to the contrary to rebut the presumption. The dog handler, Agent Allen, testified to the training procedures and certification. Additionally, testimony was presented that the dog had not had any false

alerts since the completion of her training. The presumption of reliability was established in this case.

■ The problem, however, is that Chelsea was not trained to alert to psilocybin mushrooms. Since the drug-detection dog alerted to a package that did not contain substances to which the dog was trained to alert, it is contested that no probable cause existed. This fact is, as one court stated, "irrelevant." In *United States v. Allen* (C.A.1, 1993), 990 F.2d 667, the court was confronted with a dog alert on an express mail package. As it turned out, the package contained LSD, a substance the dog was not trained to detect. The court wrote:

"In his brief, appellant also argued that the police officers lacked probable cause to search the package because the dogs were not trained to sniff LSD. * * *

"We note that the test did in fact generate probable cause. Probable cause is judged upon the information known to the authorities and presented at the time the warrant issues. [Citation omitted.] * * * That the package later turned out to contain LSD, which the dog was not trained to find, is irrevelant." *Id.* at 671, fn. 1. See, generally, *United States v. Trayer* (C.A.D.C.1990), 898 F.2d 805 (A deviation of a drug dog from its training is not necessarily detrimental to its being relied upon in assessing probable cause.).

## CONCLUSION

This court finds the procedures utilized in this case to be without constitutional infirmities. The postal inspector had reasonable, articulable suspicion based upon objective facts as required by *Terry v. Ohio, supra,* to briefly detain the packages for further investigation. The narcotic-detecting canine, by alerting to the two packages, provided probable cause for the issuance of the search warrant. The law enforcement agents acted in a proper and reasonable manner. Accordingly, the motion to suppress is overruled.

*Motion to suppress overruled.*