**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Laurena Ann LUX,**
**Defendant–Appellant.**

**No. 89–3065.**

United States Court of Appeals,
Tenth Circuit.

June 8, 1990.

Charles E. Atwell (Susan M. Hunt, and John P. O'Connor of Duncan & O'Connor, with him on the brief), of Koenigsdorf & Wyrsch, P.C., Kansas City, Mo., for defendant-appellant Laurena Ann Lux.

Leon J. Patton (Benjamin L. Burgess, Jr., U.S. Atty., with him on the brief), Asst. U.S. Atty., D. of Kansas, for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and SEAY, District Judge.[*]

SEAY, District Judge.

Defendant Laurena Ann Lux, appeals her convictions for: conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, (Count I); and attempting to possess with intent to distribute cocaine, 21 U.S.C. § 846 (Count II). Lux argues on appeal that the District Court erred by denying her motions to suppress her statements given to law enforcement officers while in custody and the cocaine seized from a package addressed to her, and admitting them in evidence. A third issue challenging defendant Lux's sentencing was confessed and withdrawn by the defendant prior to oral argument. We affirm the District Court.

On October 14, 1988, the Los Angeles, California, Postal Inspection Service (hereafter the Service), while conducting a drug interdiction operation, identified an Express Mail package as fitting the characteristics of the Service's drug package profile.[1] The package was addressed to defendant Lux at her place of employment in Kansas City, Missouri. The Service removed the package from the mail stream under controlled conditions and had it externally examined by a Los Angeles police officer and his trained drug detection dog. The dog alerted to the package.

The postal authorities forwarded the package in a secure container to the Kansas City, Missouri, Airport Mail Facility, where it arrived on Saturday, October 15, 1988. On Monday, October 17, postal authorities took the package to the Lenexa, Kansas, police department, where another drug detection dog alerted to an external examination of the package. Postal authorities then obtained a search warrant for the package, and upon opening it, they found approximately two kilograms of cocaine in two separate bricks packed inside a laundry detergent box.

On October 18, pursuant to a federal court order, the postal authorities placed a tracking and signalling device inside the package with approximately 6.35 grams of the cocaine and a substitute substance to equal the size and weight of the original package. Postal Inspector Laura Stewart, dressed as a letter carrier, made a controlled delivery of the package to defendant Lux at her workplace. Authorities secretly videotaped Lux sign for the package and walk around the corner of the building to observe the mail truck drive away.

Approximately thirty minutes later, Lux left her workplace with the drug package inside a larger box and drove to the Kansas City, Kansas, residence of her codefendant, Joseph William Hill, Jr. Lux took the drug package into Hill's residence and left shortly thereafter without it. After returning to Kansas City, Missouri, Lux was stopped and arrested.

Shortly after Lux left Hill's house, the signalling device indicated that the drug

---

[*] Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

[1.] The Service's "drug package profile" includes the following characteristics: (1) size and shape of the package; (2) package taped to close or seal all openings; (3) handwritten or printed labels; (4) unusual return name and address; (5) unusual odors coming from the package; (6) fictitious return address; and (7) destination of the package.

package had been opened. Soon thereafter, Hill drove away from his home, and the police arrested him.

The police and federal authorities maintained surveillance of the Hill residence, and later that same day, they executed a search warrant on it. They found the drug package opened and in a trash can and two sets of weighing scales of the type commonly used for weighing drugs. A search of Hill's car, pursuant to another warrant, located 14.2 grams of cocaine in the trunk.

Following her arrest, Postal Inspector Laura Stewart and Kansas City, Missouri, police detective Sam Burroughs interviewed Lux. Prior to questioning her, detective Burroughs read to her the *Miranda* Warnings and Waiver of Rights form, which she stated she understood, and she signed the Warnings portion and the Waiver portion. The Waiver portion stated, "I am willing to discuss subjects presented and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." Thereafter, Lux told them that Hill had asked her to accept delivery of the package because Hill was not always at home or at his businesses to sign for its delivery. She stated that she had known Hill for three or four weeks, and that they had dated. She said that when the package was delivered, she called Hill and told him it had come, and that she took the package to his residence and left it on his dining room table. Lux denied knowing that the package contained drugs, saying that Hill had told her it would contain shoes and a sweater. At that point, detective Burroughs leaned toward Lux, hit his fist on the table, and accused Lux of lying. Burroughs told Lux that Hill had been arrested, and that Hill had told them a different story, even though Burroughs knew that Hill had not been questioned. Lux then asked how long it would take if she wanted a lawyer and if she would have to stay in jail while she waited for a lawyer. Detective Burroughs told her he did not know how long it would take and that she would remain in jail. Thereafter, Lux changed her story and admitted knowing that the package contained drugs ordered by Hill. She stated that she knew Hill was a drug dealer, and that about three weeks previously, she had taken another package to Hill, which she subsequently was told by Hill contained drugs. She stated that she had received about $400.00 or $500.00 from Hill after she delivered the first package.

On November 21, 1988, Lux was interviewed again by Burroughs, Stewart, Lux's attorney, and the government's attorney, at which time Lux denied any prior knowledge that the intercepted package contained drugs, and she denied knowing that Hill was a drug dealer.

Lux's pretrial motions to suppress the cocaine seized from the package and her admissions were denied, 701 F.Supp. 1522, and the evidence of both was admitted, over her objections, at the trial.

I

 Defendant Lux contends that the initial detention of the package by postal authorities was an illegal search and seizure under the Fourth Amendment, which tainted and made illegal the subsequent search warrant for the package.

The package was initially detained in Los Angeles on October 14, during a drug interdiction operation being conducted by postal authorities because it met some of the criteria of the Service's "drug package profile". A drug detection dog alerted to the package. It arrived by secured delivery in Kansas City, Missouri, the following day, Saturday, October 15. It was detained until Monday, October 17, when another drug detection dog alerted to the package, at which time a search warrant was obtained. At that time, the package had been detained from its usual delivery time approximately a day or a day and one-half, principally due to October 16, being a Sunday.

The issue presented is whether the detention of the package, prior to the issuance of the search warrant, was reasonable and outside the protection of the Fourth Amendment, or were the seizures unreasonable within the meaning of that Amend-

ment. A temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity. *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *United States v. MacDonald,* 670 F.2d 910, 914 (1982). Here, the package met three factors of the Service's "drug package profile", giving authorities sufficient reasonable suspicion to subject it to a drug detection dog. The detention in Los Angeles was brief and temporary. The package arrived in Kansas City on a Saturday. The Kansas City authorities had reasonable suspicion of criminal activity from the drug package profile factors and the alert from the Los Angeles drug dog to detain the package in order to subject it to an additional drug detection dog. Although this was not done until the following Monday, we find that the delay or detention over a Sunday is not unreasonable. When the Kansas drug dog also alerted to the package a warrant was obtained for the package that day. We find that the detention of this package, prior to the issuance of a warrant, was reasonable under the circumstances, and that it did not amount to a seizure of personal property in which a person has a possessory or privacy interest within the meaning and protection of the Fourth Amendment.

## II

 Defendant Lux contends that her custodial admissions were not freely and voluntarily made because she "requested" an attorney, and her free will was overborne by the interrogation tactics of detective Burroughs.

The voluntariness of defendant's statements depends upon an assessment of the totality of all the surrounding circumstances including both the characteristics of the defendant and the details of the interroga-

tion. *United States v. Falcon,* 766 F.2d 1469, 1476 (10th Cir.1985). The trial court's findings of facts upon which such determination is made are reviewable by this court under the clearly erroneous standard. *United States v. Chalan,* 812 F.2d 1302, 1307–1308 (10th Cir.1987).

Here, there is no question that defendant Lux was advised of her *Miranda* rights, that she acknowledged she understood those rights, and that she freely and voluntarily executed a waiver of those rights. The trial court considered whether or not, during the interrogation, defendant Lux had "requested" an attorney by asking how long it would take if she wanted a lawyer and if she would have to stay in jail while she waited for a lawyer. The court determined that Lux's questions were "neither a clear nor equivocal invocation of her right to counsel". The trial court also considered whether or not detective Burroughs' actions of lying to Lux about her codefendant's statement and leaning forward and hitting his fist on the table and accusing her of lying negated the voluntariness of Lux's subsequent admissions. The trial court determined that detective Burroughs' actions were "not so extraordinary or egregious as to warrant a finding that they overbore the defendant's will". Appellant has failed to demonstrate that the trial court's findings are clearly erroneous.[2]

Based upon an independent evaluation of the record, with deference to the trial court's findings of fact, we conclude that Lux did not make a request for an attorney, and her statements were free and voluntary.

WE AFFIRM.

---

**2.** Appellant also argues that her confession was involuntary because it was coerced by an implied promise of leniency allegedly made by Burroughs. Burroughs allegedly told appellant "that she could either sit beside Joe Hill, as a defendant, or testify against him, the choice was hers". Appellant's Br. at 25. However, appel-

lant acknowledges being told that "only the United States Attorney could help her". *Id.* Because appellant was properly informed that the United States Attorney was the only official with control over a plea arrangement, Burroughs' remarks did not constitute an implied promise.