**UNITED STATES of America, Plaintiff,**

v.

**Christopher CLAPS, Defendant.**

**No. 93–CR–22.**

United States District Court,
D. Colorado.

April 29, 1993.

Craig Wallace, Asst. U.S. Atty., Denver, CO, for plaintiff.

Joseph Saint–Veltri, Denver, CO, for defendant.

MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant Christopher Claps (Claps) moves to suppress LSD seized from express mail packages deposited in a Boulder, Colorado express mail drop box on Thursday January 30, 1992. Evidence was taken on this motion on April 15, 1993. Supplemental briefs were submitted on April 23, 1993. The motion is denied.

Claps is charged with two counts of distributing LSD, violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(v), and 841(b)(1)(B)(v). Sometime between January 11, 1992 and January 19, 1992 two express mail parcels were mailed from an express mail drop box in Boulder, Colorado. Although unclear it appears from the parcels' receipts that they were mailed sometime between January 11, 1992 and January 19, 1992. (*See* exhibits 3a and 3b.) A sender must put his return address on a receipt attached to an express mail package before placing the item in a drop box. After the postal service picks up the item the receipt is then removed from the package and mailed to the return addressee to verify that the post office received the package. The ex-

press mail supervisor in Boulder, Jane Rausch (Rausch), was responsible for mailing the receipts to the return addressee. The return addressee on the receipts for the parcels mailed between January 11, 1992 and January 19, 1992 was "J. Scott". (*See* exhibits 3a and 3b.) One receipt had a return address of "917 Penn. Boulder CO 80203", (*see* exhibit 3a), and the other a return address of "917 Pennsylvania Boulder CO 80203", (*see* exhibit 3b). On January 24, 1992 these receipts were returned to the Boulder post office as "undeliverable". Rausch placed these undeliverable January 24 receipts in her undeliverable receipts file.

On Thursday, January 30, 1992 at 3:45 p.m. two more express mail parcels were deposited in a Boulder express mail drop box with "J. Scott" as the return addressee and a return address of "917 Spruce # 2, Boulder CO 80203". (*See* exhibits 3c and 4.) One package was addressed to Brad Scott in Corning, New York. (*See* exhibit 3c.) The other was addressed to Todd Butler in Greer, South Carolina. (*See* exhibit 4.) These parcels were designated for 3:00 p.m., second day delivery. (*See* exhibits 3c and 4.) This means the parcels were to be delivered to their respective destinations by 3:00 p.m. Saturday February 1, 1992.

Late in the afternoon on January 30, 1992 Rausch received the receipts for the two express mail packages mailed that day. She recognized the name "J. Scott" because she had recently placed two undeliverable receipts bearing the same name in her undeliverable receipts file. Rausch compared the two sets of receipts and noticed the return addressee was the same, but the return addresses were different. Rausch then confirmed with a Boulder mail carrier that there was no 917 Spruce # 2 address in Boulder. Rausch, trained to notice such discrepancies, immediately relayed all of this information to United States Postal Inspector Ross Casados (Casados). Casados instructed Rausch to retrieve the packages and mail them to him in Denver by express mail. Rausch did so, and Casados received the January 30 parcels early in the morning on Friday January 31, 1992.

During the morning of January 31, 1992 Casados contacted a postal inspector in South Carolina and mailed him the South Carolina package that day. The South Carolina postal inspector received this parcel on Sunday February 2, 1992. He then made a controlled delivery to the addressee on Monday February 3, 1992. (Government's April 8, 1993 response at 3.) LSD was found in this parcel at this time.

Also during the morning of January 31, 1992, Casados attempted to contact a postal inspector in New York City. However, he never spoke to one. Sometime during the morning of January 31, 1992, Casados sent the Corning, New York parcel to the postal inspector's office in New York City with a written statement explaining what he knew about the parcel. Unbeknownst to Casados, the Buffalo, New York postal inspector's office was responsible for handling the Corning, New York package. The New York City postal inspector's office forwarded the parcel to the Buffalo postal inspector's office. The Buffalo postal inspector's office received the parcel on Tuesday February 4, 1992. Based on information gained from the South Carolina postal inspector, the Buffalo postal inspector obtained a search warrant on February 4, 1992 and discovered LSD in this parcel.

■ Claps contends only that the seizure of the LSD was tainted by the parcels' wrongful detention here in Colorado. Claps argues that there was no reasonable suspicion to detain the packages in Colorado and the length of the detention was unreasonable.

■ "A temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity." *United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir.1990). The government bears the burden of proving by a preponderance of the evidence that the initial detention is constitutionally valid. *United States v. Mendenhall*, 446 U.S. 544, 550, 100 S.Ct. 1870, 1875, 64 L.Ed.2d 497 (1980).

Casados made the decision to detain the parcels after Rausch told him what she knew about the January 24 and January 30 receipts. Hence, the first issue is whether Casados had a reasonable suspicion of criminal activity to detain the packages.

I find and conclude the government has established by a preponderance of the evidence that Casados had a reasonable suspicion the January 30 packages contained illegal items. Casados has considerable experience in detecting illegal narcotics mailed by express mail. He has seized approximately 100 packages on suspicion that they contained illegal narcotics. 95 of these parcels, in fact, contained illegal narcotics. All of the parcels he seized which contained illegal narcotics had false return addresses. Casados testified that a false return address is a sign that a parcel might contain illegal narcotics.

Rausch credibly testified that there is no 917 # 2 Spruce address in Boulder. This wrong address cannot be explained as a mere misprint when considered in conjunction with the undeliverable January 24 receipts. The January 30 receipts had the same return addressee, "J. Scott", as the undeliverable January 24 receipts. However, in contrast to the January 24 receipts, the January 30 receipts had an apartment number and a different street for the return address (917 # 2 *Spruce* as opposed to 917 *Penn.* or *Pennsylvania*). These facts manifest the sender's intent to use an incorrect return address to mask illegal conduct. All of the packages previously seized by Casados which contained illegal narcotics had false return addresses. A reasonable postal inspector with Casados' experience would consider significant such striking discrepancies between these receipts' return addresses. I find that the false and discrepant return addresses for "J. Scott" on the January 24 and January 30 receipts constituted a significant articulable basis for reasonable suspicion that the January 30 parcels contained illegal items.

Furthermore, Casados' failure to submit these parcels to a drug dog sniff is not an indication that he lacked a reasonable suspicion of illegal activity. Reasonable suspicion existed without such corroboration.

Under the totality of the circumstances Casados had a reasonable suspicion that the January 30 parcels contained contraband. His detention of the parcels, therefore, was reasonable. I turn now to the question whether the durations of the detentions were permissible under the Fourth Amendment.

There are no hard and fast rules setting the time first class mail, much less second day delivery express mail, may be detained on reasonable suspicion of criminal activity. *United States v. Van Leeuwen,* 397 U.S. 249, 253, 90 S.Ct. 1029, 1032–33, 25 L.Ed.2d 282 (1970). Rather, this issue must decided on the facts and circumstances of each case. *Van Leeuwen,* 397 U.S. at 253, 90 S.Ct. at 1032–33. In *Van Leeuwen* the Supreme Court had little difficulty concluding that a one and one-half hour detention of a package mailed first class was permissible. *Van Leeuwen,* 397 U.S. at 252, 90 S.Ct. at 1032. The Court also concluded that a 29 hour detention of a package mailed first class was reasonable for investigative purposes where the delay was caused by difficulties encountered by Seattle, Washington agents in contacting authorities in eastern time zones late in the afternoon, traffic congestion, and the distance of the package from a place where a search warrant could be obtained. *Van Leeuwen,* 397 U.S. at 253, 90 S.Ct. at 1032–33. In *Lux* the Tenth Circuit concluded a one day detention of an express mail parcel was permissible where the delay in delivery was attributable to an intervening Sunday. *Lux,* 905 F.2d at 1382.

The government contends the detention in this case was temporary and, thus, reasonable because Casados possessed the parcels for only three hours in Denver before sending them to South Carolina and New York, respectively. I do not view this detention so narrowly. Although in the mail stream, these parcels were subject to the postal inspectors' control. Moreover, I read *Van Leeuwen* and *Lux* to measure the detention period from the time authorities intercept the parcel to the time probable cause arises under the Fourth Amendment to seize the parcel or the parcel is returned to the normal mail stream. Also, the reasonableness of the detention should be considered with reference to the expected time of delivery.

Here both January 30 express mail parcels were to be delivered by 3:00 p.m., Saturday February 1, 1992. People using express mail expect the item to be delivered on a promised date before a promised time. Boulder postal employees intercepted the parcels on

Casados' instructions shortly after Rausch conferred with him late in the afternoon on January 30, 1992. Casados passed the South Carolina parcel on to a South Carolina postal inspector who received it on Sunday February 2, 1992. He then delivered it to the address sometime on Monday February 3, 1992. Therefore, the detention delayed delivery of the South Carolina parcel by two days. However, as in *Lux,* one day should be excluded because of an intervening Sunday. *See Lux,* 905 F.2d at 1382. This extra day was necessary to transport the parcel to a South Carolina postal inspector to make a controlled delivery. I conclude that the one day delay for necessary investigative purposes minimally infringed on the sender's expectation that the express mail would be delivered by a certain date and time. Therefore, the length of the detention of the South Carolina parcel was constitutionally valid.

■ Probable cause to obtain a search warrant and seize the Corning, New York package arose on Monday February 3, 1992 when contraband was found in the South Carolina parcel. One day delay to obtain the February 4 warrant was minimal under the circumstances. Additional delay was caused here because Casados sent the parcel to New York City rather than the Buffalo postal inspector's office. This package, therefore, was detained three days. One day is excluded for an intervening Sunday. *Lux,* 905 F.2d at 1382. The additional delay caused by sending the package to New York City was an innocent error by Casados. He could not reach a postal inspector in New York City when he called during the morning of January 31, 1992. Casados reasonably assumed that the New York City postal inspector's office could handle this parcel. Because he was under time constraints to not unreasonably detain this package, he sent it to New York City. I find that Casados diligently attempted to deliver this package quickly while still taking adequate time for investigation. Casados acted diligently and reasonably under the circumstances. Hence, I conclude that the delay caused by sending the package to the wrong postal inspector's office is excusable. Therefore, under the totality of the circumstances, the length of the detention of the Corning, New York package was permissible under the Fourth Amendment.

I conclude as a matter of law that the January 30 parcels were detained on reasonable suspicion of illegal activity and that their detentions were temporary under the totality of the circumstances. Accordingly, the detention of the January 30 parcels was reasonable and permissible under the Fourth Amendment. This detention, therefore, does not taint the later seizures of the LSD.

Accordingly, IT IS ORDERED that Claps' motion to suppress is denied.