78 F.3d 598
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph C. BENNETT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronda L. ALLPHIN, Defendant-Appellant.
 Nos. 94-6458, 95-6012, 94-6460.
 United States Court of Appeals, Tenth Circuit.
 March 6, 1996.
 
 Before PORFILIO, ANDERSON, and KELLY, Circuit Judges.
 ORDER AND JUDGMENT*
 ANDERSON, Circuit Judge.
 
 
 1
 These two appeals have been companioned for purposes of appeal. Both defendants, Joseph C. Bennett and Ronda L. Allphin, appeal from their convictions and sentences on one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and one count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Mr. Bennett was sentenced to 262 months imprisonment on both counts, with the sentences to run concurrently, and Ms. Allphin was sentenced to 97 months imprisonment, with the sentences to run concurrently. For the following reasons, we affirm the convictions and sentences of both defendants.[1]
 
 BACKGROUND
 
 2
 On July 12, 1994, United States Postal Service Inspector Mitchell Davis identified an Express Mail package as suspicious of containing drugs, based upon the Postal Service's drug package profile. The Postal Service includes a number of factors in its drug package profile: (1) the origin of the package; (2) the way the package is wrapped; (3) any strange odor emanating from the package; (4) the weight and feel of the package; (5) a comparison of the zip code on the return address with the zip code from whence the package was mailed; (6) whether it has a local destination; (7) whether it has a fictitious or unknown return address; and (8) whether the package is from an individual to an individual with handwritten labels. See United States v. Lux, 905 F.2d 1379, 1380 n. 1 (10th Cir.1990); see also United States v. Banks, 3 F.3d 399, 402 (11th Cir.1993) (per curiam), cert. denied, 114 S.Ct. 1097 (1994); United States v. Daniel, 982 F.2d 146, 150 n. 5 (5th Cir.1993); United States v. Cantrall, 762 F.Supp. 875, 879-80 (D.Kan.1991); R. Vol. I at 25-26; R. Vol. II at 97.[2]
 
 
 3
 When he initially picked out the particular package at issue in this case, Inspector Davis observed three suspicious circumstances: the package originated in Santa Ana, California, a known drug source area; the package was from an individual to an individual with handwritten labels; and the weight and feel of the package were suspicious because it felt like it contained a hard brick-like substance. Id. at 99. The package was addressed to Joe Bennett at 6321 S. Lindsey, Oklahoma City, Oklahoma.
 
 
 4
 Inspector Davis initially removed the package from the mail stream at approximately 10:00 a.m., and he took it to the Oklahoma City police department to be sniffed by a dog. The dog alerted to the package. Inspector Davis then took the package to the Oklahoma Bureau of Narcotics, where another dog alerted to the package. While en route, he received notification that the return address on the package was fictitious.
 
 
 5
 At approximately 2:45 p.m. that day, Inspector Davis obtained a search warrant for the package from a United States Magistrate Judge. When he opened the package, he found a wrapped box, inside of which was another wrapped box, inside of which were two cellophane-taped black bundles containing 894 grams of a white substance which field tested positive for methamphetamine.
 
 
 6
 Inspector Davis and an Oklahoma Bureau of Narcotics detective placed an electronic monitoring device in the bottom of the package, along with two bundles containing 32 grams of methamphetamine mixed with flour, packaged and weighted to resemble the original two bundles, and some iridescent powder. They rewrapped the package and obtained an anticipatory search warrant for the premises of the addressee, 6321 S. Lindsey, Oklahoma City.
 
 
 7
 At approximately 6:00 p.m. that day, Inspector Davis, dressed as a mail carrier, delivered the package to the stated address. Ms. Allphin accepted the package, signing for it as "Jo Bennett," and took it inside the house. Inspector Davis testified that she "was very eager for the package." Id. at 120. Approximately ten minutes later, the Oklahoma City police served the search warrant on the house. At that time, Ms. Allphin was standing in the driveway with another man, and the police found Mr. Bennett lying on a bed in a back bedroom. The transmitting device had been thrown against the wall, and evidence of the iridescent powder was found on a toilet bowl, and on the hands of both Mr. Bennett and Ms. Allphin. Police officer James Hughes testified that the powder on Ms. Allphin's hands was consistent with her having opened the package. Id. at 161-62. The police never recovered the methamphetamine mixed with flour.
 
 
 8
 After she was advised of her rights, Ms. Allphin told Inspector Davis that she thought the package contained a car part. Both Mr. Bennett and Ms. Allphin were arrested. When the police searched the house, they seized a number of items, including three firearms, some methamphetamine, $10,120.00 in twenty and one hundred dollar bills, some scales, a Western Union money transfer order from Ms. Allphin to Mike Perkins for $1,000.00, the Express Mail package Inspector Davis had just delivered (without its contents), a scanner and various documents.
 
 
 9
 Counsel representing both Mr. Bennett and Ms. Allphin moved to suppress the methamphetamine seized from the package. The motion was denied, and the methamphetamine was admitted into evidence at the trial, along with the other items seized from the house when the package was delivered and the search warrant executed. The jury found both defendants guilty. These appeals followed.
 
 DISCUSSION
 I. Mr. Bennett; Appeal No. 94-6458
 
 10
 Mr. Bennett argues that the district court erred in denying his motion to suppress, because he claims that Inspector Davis lacked reasonable suspicion to seize the package based on the three suspicious elements of the drug package profile. He also argues the district court erred in failing to specifically instruct the jury that interdependence is an element of the crime of conspiracy.
 
 A. Seizure of package
 
 11
 When reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government and we review the district court's findings of fact only for clear error." United States v. Alarcon-Gonzalez, No. 95-1209, 1996 WL 3312 at * 2 (10th Cir.1996). We review de novo the ultimate determination of whether a search or seizure was reasonable under the Fourth Amendment. Id.; see also United States v. Carhee, 27 F.3d 1493, 1496-97 (10th Cir.1994).[3]
 
 
 12
 Mr. Bennett argues that Inspector Davis lacked a reasonable suspicion to detain the package and subject it to a dog sniff. "A temporary detention of mail for investigative purposes is not an unreasonable seizure when authorities have a reasonable suspicion of criminal activity." Lux, 905 F.2d at 1382; see United States v. Van Leeuwen, 397 U.S. 249 (1970). In Lux, we recognized the validity of basing a reasonable suspicion on the presence of certain factors from the drug package profile. We held in that case that a package meeting three of the factors was properly detained. While our appellate opinion did not specify which three factors were present, the district court's opinion in Lux described the package as follows: it "has a handwritten label, the return address was fictitious, and the package's destination was Kansas City, a known destination city for illegal drugs." United States v. Hill, 701 F.Supp. 1522, 1526-27 (D.Kan.1988), aff'd sub nom. United States v. Lux, 905 F.2d 1379 (10th Cir.1990). Additionally, the district court noted that the package originated in a known drug source city.
 
 
 13
 In this case, the district court relied upon Lux in concluding that the presence of three factors from the drug package profile rendered reasonable the temporary detention of the package addressed to Mr. Bennett. Mr. Bennett argues that the three factors present in this case are qualitatively different from the three factors present in Lux, and that the district court therefore erred in relying on Lux to deny his motion to suppress. Specifically, Mr. Bennett argues that the fact that the package came from California, as opposed to a known drug source city within California, and the fact that it had a handwritten label from an individual, are too vague a basis upon which to find reasonable suspicion. He further argues that the third factor--the "brick-like" feel of the contents of the package--would apply to many innocent items sent through the mail and does not, even in combination with the other two factors, evoke a reasonable suspicion. He particularly relies upon the fact that in Lux, one of the factors present at the time the package was seized was the "inherently suspicious fact that it bore a false return address." Appellant's Br. at 11. We disagree.
 
 
 14
 In Lux we did not imply that certain factors were more probative than others. We simply recognized that the presence of three factors from the drug package profile together provided a reasonable suspicion permitting a brief detention of the package. Another court has held that the presence of three factors was sufficient. See Cantrall, 762 F.Supp. at 879 (finding the presence of a handwritten label, a non-matching return address and return addressee, and the fact that the destination was a residential address in Wichita, Kansas, provided reasonable suspicion justifying the brief detention of the package). See also Daniel, 982 F.2d at 150 ("Like the Lux court, we believe that while any one of these factors standing alone might not provide reasonable suspicion, an aggregate of factors passes muster under the Terry doctrine.") (emphasis added). In sum, we cannot say that the presence of the three factors in this case is so qualitatively different from the presence of three factors in Lux that we must reach a different conclusion from the one we reached in Lux. We therefore affirm the district court's denial of the motion to suppress the package.
 
 B. Jury Instructions
 
 15
 Mr. Bennett next argues that the district court erred in not explicitly instructing the jury that interdependence is a necessary element of a conspiracy. Mr. Bennett concedes that he failed to object to the jury instructions at the time they were given. Because he failed to object to the instructions, we review them only for plain error. United States v. Kennedy, 64 F.3d 1465, 1478 (10th Cir.1995). "Plain error exists if the contested instruction was so prejudicial or lacking in its elements that justice cannot have been served." Id. at 1479. When we review jury instructions, "the instructions must be read and evaluated in their entirety." United States v. Denny, 939 F.2d 1449, 1454 (10th Cir.1991). A judge has "extensive discretion in tailoring jury instructions, provided that they correctly state the law and fairly and adequately cover the issues presented." United States v. Conway, No. 94-3406, 1995 WL 758347 at * 4 (10th Cir.1995).
 
 
 16
 We have held that, in order to prove a conspiracy, the government must prove " '(1) agreement with another person to violate the law; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement; and (4) interdependence among the alleged coconspirators.' " United States v. Edwards, 69 F.3d 419, 430 (10th Cir.1995) (quoting United States v. Pedraza, 27 F.3d 1515, 1524 (10th Cir.), cert. denied, 115 S.Ct. 347 (1994)). We have discussed in previous cases the meaning of the interdependence requirement. "[I]nterdependence exists where 'each coconspirators' activities "constituted essential and integral steps toward the realization of a common, illicit goal." ' " Edwards, 69 F.3d at 431 (quoting United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.), cert. denied, 498 U.S. 874 (1990) (quoting United States v. Brewer, 630 F.2d 795, 799 (10th Cir.1980))). We have also described the element of interdependence as requiring "proof that [the conspirators] intended to act together for their shared mutual benefit within the scope of the conspiracy charged." United States v. Evans, 970 F.2d 663, 671 (10th Cir.1992), cert. denied, 113 S.Ct. 1288 (1993).[4]
 
 
 17
 The district court instructed the jury as follows regarding the charge of conspiracy
 
 CONSPIRACY--DEFINED
 
 18
 A conspiracy is a combination of two or more persons, by concerted action, to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means. It is a kind of "partnership in criminal purposes," in which each member becomes the agent of every other member. The gist of the offense is a combination or agreement to disobey or to disregard the law.
 
 
 19
 Instruction No. 20, Supp. Vol. I, Tab 48. It also instructed:
 
 CONSPIRACY--PROOF OF EXISTENCE
 
 20
 Mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and discussed common themes and interests does not necessarily establish proof of the existence of a conspiracy.
 
 
 21
 However, the evidence in a conspiracy case need not show that the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be accomplished. Similarly, the evidence in the case need not establish that all the manner and means of the conspiracy and all the charged overt acts in furtherance of the conspiracy were in fact agreed upon and carried out.
 
 
 22
 What the evidence in the case must show beyond a reasonable doubt, in order to establish proof that a conspiracy existed, is that the members in some way or manner, or through some contrivance, either expressly or by silent agreement came to a mutual understanding to try to accomplish a common and unlawful plan.
 
 
 23
 The instruction I am now delivering to you deals only with the existence of a conspiracy.
 
 
 24
 Instruction No. 21, id.
 
 
 25
 While it might have been preferable for the district court to have explicitly reiterated the element of interdependence, given our standard of review, we only inquire whether the instructions as a whole were "so ... lacking in [their] elements that justice cannot have been served." Kennedy, 64 F.3d at 1479. We think the instructions as a whole adequately apprised the jury of the need to find interdependence--"proof that [the conspirators] intended to act together for their shared mutual benefit." Evans, 970 F.2d at 671. Instruction No. 21 required proof that "the members [of the conspiracy] in some way or manner ... either expressly or by silent agreement came to a mutual understanding to try to accomplish a common and unlawful plan." Instruction No. 21, Supp. Vol. I, Tab 48. (emphasis added). The court also instructed the jury that a conspiracy is a "combination of two or more persons, by concerted action, to accomplish some unlawful purpose...." Instruction No. 20, id. (emphasis added). Those instructions, while not explicitly using the word "interdependence," adequately captured the essence of the word. Cf. United States v. Childress, 58 F.3d 693, 706-09 (D.C.Cir.1995) (holding that while court erred in instructing jury that conspiracy is a general intent crime, the error was harmless in view of the remaining instructions), cert. denied, 1995 WL 761662 (U.S. Jan. 22, 1996). We see no plain error in the court's instructions to the jury.
 
 II. Ms. Allphin; Appeal No. 94-6460
 
 26
 Ms. Allphin raises the identical argument regarding the seizure of the package as Mr. Bennett has made. We have already rejected the argument that the motion to suppress the evidence contained in the package, and any fruits therefrom, was improperly denied.
 
 
 27
 Ms. Allphin makes a broader challenge to the district court's jury instructions: "[t]he trial court failed to enumerate the essential elements of the two offenses for which Ms. Allphin was being tried." Appellant's Br. at 8. She also challenges the sufficiency of the evidence supporting both of her convictions.
 
 A. Jury Instructions
 
 28
 Ms. Allphin argues that the court failed to instruct on any of the essential elements of the crime of conspiracy, most particularly on the interdependence element. She also argues the court failed to fully and effectively delineate the essential elements of the second count, possession of methamphetamine with intent to distribute. As we have indicated in the context of Mr. Bennett's appeal, she failed to object to these instructions at the time they were proposed and given. We therefore review only for plain error. Kennedy, 64 F.3d at 1478-79.
 
 
 29
 We have already held that the court's instructions adequately conveyed to the jury the element of interdependence. Ms. Allphin concedes that "the court's instructions were correct statements of the law regarding the elements of conspiracy and, by inference, referred to the existence of essential elements." Appellant's Br. at 17. She then makes the rather general argument that that is insufficient, and the court should have explicitly referred to each essential element. We disagree. The court's instructions adequately conveyed to the jury what it needed to find if it was going to convict Ms. Allphin on the conspiracy count.
 
 
 30
 She also argues the court's instructions on count two--possession of methamphetamine with intent to distribute it--while "correct statements of the law," id. at 18, were fatally flawed by the same failure to specifically enumerate each essential element as an essential element. Again we disagree. The instructions defined each part of the statutory elements of the count. Ms. Allphin provides no specific examples of what she believes was wrongly omitted from the instructions. We perceive no plain error in the instructions as given.
 
 B. Sufficiency of the evidence
 
 31
 Ms. Allphin challenges the sufficiency of the evidence supporting her convictions under counts one and two. "We review the sufficiency of the evidence in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Jones, 44 F.3d 860, 864 (10th Cir.1995). We have acknowledged that "the jury may draw reasonable inferences from direct or circumstantial evidence," but the inferences "must be more than speculation and conjecture to be reasonable." Id. at 865. Additionally, we "accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." United States v. Levine, 41 F.3d 607, 610 (10th Cir.1994).
 
 
 32
 We have carefully reviewed the entire record in this case, which reveals the following evidence: Ms. Allphin received a package containing methamphetamine, which was addressed to Joe Bennett, at the address which she shared with Mr. Bennett. She signed for it as "Jo Bennett," and seemed "eager" to receive it. She indicated that she thought it contained a car part. When arrested, she had iridescent powder on her hands, consistent with having opened the package. When the police searched the house, the contents of the package were gone, and there was evidence consistent with it having been flushed down the toilet. The police found other items in the house in which Ms. Allphin and Mr. Bennett resided, which are consistent with drug distribution, and for which no innocent explanation was provided.
 
 
 33
 All of the evidence against Ms. Allphin is indeed circumstantial, but the question is whether, viewed in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jones, 44 F.3d at 864. We further bear in mind that we must "accept the jury's resolution of conflicting evidence." Levine, 41 F.3d at 610. As we have previously stated, an appellant challenging her conviction on sufficiency of the evidence grounds must overcome a "difficult standard" of review. United States v. Hoenscheidt, 7 F.3d 1528, 1530 (10th Cir.1993). We conclude that Ms. Allphin has failed to meet that difficult standard.
 
 
 34
 The jury concluded that the evidence, albeit circumstantial, permitted the reasonable inference that Ms. Allphin knowingly participated with Mr. Bennett and others in a conspiracy to distribute methamphetamine and that she possessed the methamphetamine with the intent to distribute it. An agreement to violate the law "may be inferred from the facts and circumstances of the case." Evans, 970 F.2d at 669. Constructive possession of narcotics may be proved circumstantially by evidence that a defendant had knowing dominion or control over the drugs and the location where they were found. United States v. Conway, No. 94-3406, 1995 WL 758347 at * 6 (10th Cir.1995). Intent to distribute may be proven inferentially by evidence of a sufficiently large quantity of narcotics. United States v. Parrish, 925 F.2d 1293, 1297 (10th Cir.1991). We believe that a rational trier of fact could conclude beyond a reasonable doubt that Ms. Allphin was guilty of both the conspiracy and the possession counts. We therefore find the evidence presented sufficient to support Ms. Allphin's convictions on both counts.
 
 
 35
 For the foregoing reasons, the convictions and sentences of both Mr. Bennett and Ms. Allphin are AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [1]
 Mr. Bennett filed two appeals: No. 94-6458, a timely appeal filed by his counsel after entry of the district court's final judgment; and No. 95-6012, an untimely pro se appeal filed by Mr. Bennett, purportedly from that same final judgment. We dismiss appeal No. 95-6012 for lack of appellate jurisdiction
 
 
 [2]
 In Lux, we described the Postal Service's drug package profile as including seven factors: "(1) size and shape of the package; (2) package taped to close or seal all openings; (3) handwritten or printed labels; (4) unusual return name and address; (5) unusual odors coming from the package; (6) fictitious return address; and (7) destination of the package." Lux, 905 F.2d at 1380 n. 1. The Daniel court described the profile as including the following factors:
 i) the size and shape of the package (particularly in view of the declared contents of the package); ii) whether the package is taped to seal all openings; iii) whether mailing labels are hand-written; iv) whether the return addressee and the return address listed on the package match; v) unusual odors coming from the package; vi) whether the city of origin and/or city of destination of the package are common 'drug source' locales; and vii) whether there have been repeated mailings involving the same sender and addressee.
 Daniel, 982 F.2d at 150 n. 5.
 
 
 [3]
 We initially dispose of the government's argument that by failing to object to the admission of the evidence at trial, Mr. Bennett has waived his right to challenge the earlier denial of his motion to suppress. We recently rejected this very argument in United States v. Martinez-Cigarroa, 44 F.3d 908, 909 n. 1 (10th Cir.) (" '[T]he overruling of a pretrial motion to suppress the use at the trial of particular evidence preserves the point and renders it unnecessary again to object when such evidence is offered at the trial.' ") (quoting Lawn v. United States, 355 U.S. 339, 353 (1958)), cert. denied, 115 S.Ct. 1386 (1995)
 
 
 [4]
 The government argues that the Supreme Court's decision in United States v. Shabani, 115 S.Ct. 382 (1994) effectively overrules any requirement for interdependence as an element of a conspiracy. Shabani held that proof of overt acts is not required in a conspiracy conviction under 21 U.S.C. § 846. The government argues that interdependence requires proof of overt acts; therefore Shabani implicitly overruled our cases requiring interdependence
 As Mr. Bennett points out, we have, since Shabani, reiterated the requirement of interdependence, while acknowledging that Shabani holds that proof of overt acts is no longer necessary. See United States v. Williamson, 53 F.3d 1500, 1516 n. 9 (10th Cir.), cert. denied, 116 S.Ct. 218 (1995). We also observed in Williamson that our circuit had held, prior to Shabani, that proof of overt acts was not necessary. Id. We therefore follow the implicit holding in Williamson that interdependence does not require proof of overt acts, and that Shabani has no bearing on our interdependence requirement. See also United States v. Jones, 44 F.3d 860, 870-71 (10th Cir.1995) (post-Shabani case finding that interdependence was self-evident).