**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OSCAR VILLA RAMIREZ, a/k/a
OSCAR VILLA, a/k/a OSCAR
RAMIREZ,

Defendant-Appellant.

No. 02-8103

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 00-CR-031-01-B)**

---

Thomas B. Jubin of Jubin & Zerga LLC, Cheyenne, Wyoming, for Defendant-Appellant.

David A. Kubichek, Assistant United States Attorney (Matthew H. Mead, United States Attorney, with him on the brief), Casper, Wyoming, for Plaintiff-Appellee.

---

Before **SEYMOUR** and **KELLY**, Circuit Judges, and **SHADUR**,[*] District Judge.

---

**SEYMOUR**, Circuit Judge.

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

Oscar Villa-Ramirez was convicted on twelve felony counts of trafficking in controlled substances.  He now appeals both his conviction and sentence, challenging the denial of his motion to suppress evidence.  We affirm.

## I

The events leading up to this case began when a letter carrier in Wyoming informed a postal inspector in Denver of his suspicions regarding several Express Mail packages sent to Casper, Wyoming from Montebello, California, a known source area for methamphetamine distribution to Wyoming.  The inspector instructed the letter carrier to retrieve the labels from these packages and to send them to him.  When the inspector received the labels, he examined the dates, the handwriting and the return addresses.  Based on his findings, including a non-existent return address, he issued a mail watch letter to the Casper, Wyoming post office regarding the address to which the Express Mail packages had been delivered.  The letter carrier duly sent to the inspector another label from a suspicious package going to the same address.

A few weeks later, the same letter carrier informed the inspector of his suspicions concerning another Express Mail package addressed to a different individual at a different address in Casper.   This package also bore a return address from Montebello, California.  After reviewing a photocopy of the label,

the inspector agreed with the letter carrier that the handwriting was similar to that on some of the packages delivered to the address under the mail watch. Based upon these suspicions, the inspector contacted the Wyoming Division of Criminal Investigation (WDCI) and ordered that the package be taken from the mail stream and subjected to a canine narcotics check. WDCI Agent Albert Bennett immediately obtained the services of a Casper police officer and his trained and certified narcotics detection canine, Kay. The package was examined by Kay, who did not alert to it.

The same afternoon, in accordance with the inspector's instructions, the package was sent on to Denver. When the package arrived in Denver the next morning, it was subjected to further canine checks. Two dogs alerted to the package. Based upon these two affirmative indications, and pursuant to a search warrant, the package was opened and found to contain controlled substances. Further investigation led to the charges against Mr. Villa-Ramirez.

Mr. Villa-Ramirez moved to suppress the evidence taken from the package, maintaining that the search violated his Fourth Amendment rights. The district court denied the motion and Mr. Villa-Ramirez appeals.

**II**

Mr. Villa-Ramirez does not dispute on appeal that there was reasonable

suspicion to detain the package before the first dog sniff.  Aplt. Br. at 10-11.[1]  He

argues instead that Kay's failure to alert in the first examination "vindicated" the

package and eliminated the reasonable suspicion, so that the package should have

been returned immediately to the mail stream.  For the reasons set out below, we

disagree.

The Fourth Amendment assures the right to be free from unreasonable

searches and seizures of items entrusted to the postal system.  *See United States v.*

*Van Leeuwen*, 397 U.S. 249, 251 (1970).  However, certain packages may be

detained for investigative purposes when the authorities have reasonable

suspicion of criminal activity.  *See United States v. Lux*, 905 F.2d 1379, 1382

(10th Cir. 1990).  In such cases, the authorities may detain the package for

investigation for a reasonable length of time.  *See id.*  Where investigators have

acted with reasonable diligence, courts have found acceptable the detention of

mail for anywhere from twenty-nine hours to five days.  *See Van Leeuwen*, 397

U.S. at 252-53 (twenty-nine hours); *United States v. Gill*, 280 F.3d 923, 929 (9th

Cir. 2002) (four to five days); *Lux*, 905 F.2d at 1381-82 (over three days); *United*

---

[1] While his reply brief attempts to retract the concessions in his opening brief by focusing on the "theoretical" nature of the language used, Mr. Villa-Ramirez nowhere asserts that there was *not* reasonable suspicion before the first dog sniff.  Nor is his attempt at explaining away the original language successful, particularly since his counsel conceded in the district court that the facts available to the inspector prior to the dog sniff were sufficient to establish reasonable suspicion.  *See* Rec., vol. VII at 7-8.

*States v. Mayomi*, 873 F.2d 1049, 1054 (7th Cir. 1989) (over forty-eight hours).

As the Court said in *Van Leeuwen*,

> No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. *The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained.*

397 U.S. at 253 (emphasis added).

In this case, only twenty-eight hours elapsed from the initial removal of the package from the mail stream until the package was opened with a search warrant. At first blush, the length of time was certainly well within the range so far established. We thus turn to Mr. Villa-Ramirez' contention that the reasonableness of the mail detention ended when a qualified drug dog failed to alert on the package.

The factors giving rise to reasonable suspicion in the first place remained unchanged by the positive or negative results of the first sniff test. We have previously determined that a dog sniff test is not required when an item is taken from the mail stream. *See United States v. Glover*, 104 F.3d 1570, 1577 (10th Cir. 1997). In fact, we indicated in *Glover* our rejection of the proposition that a dog's failure to alert requires an investigator to return a package to the mail stream immediately. We said:

Kozak argues that the postal inspectors were obligated to

immediately submit the package to a drug-detecting dog and to return the package to the mail stream if the dog did not detect the presence of drugs. Kozak relies on a line of cases holding that probable cause is established once a drug dog alerts on a package for the mistaken proposition that absent such an alert, officers are not entitled to detain the package any further. Contrary to Kozak's assertion, drug-detecting dogs have not supplanted the neutral and detached magistrate as the arbiter of probable cause.

*See id.* at 1577. We also implied in *Glover* that an investigator need not honor a dog's judgment in every case, because even highly trained dogs remain fallible.[2] *See id.* at 1577 n.3.

Mr. Villa-Ramirez cites no authority to contradict this indication in our case law. Recent case law in the Ninth Circuit reinforces what our own case law suggests. The Ninth Circuit was untroubled by the fact that an inspector's investigative detention of a package did not cease when a dog failed to alert. *See Gill*, 280 F.3d at 926 & n.3. We will not require investigators to cease an otherwise reasonable investigation solely because a dog fails to alert, particularly when we have refused to require that a dog sniff test be conducted at all.

To the extent Mr. Villa-Ramirez argues in general that the scope and

---

[2] At the suppression hearing in this case, Kay's handler surmised that her failure to alert could have been due to the large quantity of drugs in the package, which was far greater than the amounts she had been trained or certified on, or the fact that the sender had disguised the scent with grease and coffee grounds, or just that she was having a bad day. Rec., vol. VII at 33-35. Her certifier agreed that the large quantity of drugs could have overwhelmed Kay's senses. *Id.* at 97-98.

duration of the detention violated the Fourth Amendment, we add the general note that dog sniffs are not "searches" within the meaning of the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 707 (1983); *see also United States v. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990). Thus it follows that the dog sniff test was as unintrusive a means as possible for conducting this investigation. The manner and length of the investigation in this case were perfectly appropriate and it is clear that the inspector acted with diligence and dispatch in pursuing his inquiries about the package.

Accordingly, we **AFFIRM**.