**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

LEROY TCHOD CAMERON
RAVENELL,

　　Defendant - Appellant.

No. 18-2091
(D.C. No. 2:17-CR-01308-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **KELLY**, and **EID**, Circuit Judges.
_____

During a border check, Border Patrol agents found 0.8 pounds of cocaine in

Appellant-Defendant Leroy Ravenell's car.  Ravenell was arrested and, during a later

interrogation by Drug Enforcement Administration (DEA) agents, confessed the

cocaine was his.  He was indicted for possession with intent to distribute cocaine and

moved to suppress his confession.  The district court held an evidentiary hearing and

denied his motion.  Ravenell contends the district court erred and asks us to reverse.

Seeing no reversible error, we affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

At approximately 4:10 p.m. on November 11, 2016, Ravenell and his friend, Rashad Wilson, entered the Highway 54 Border Patrol Checkpoint in Alamagordo, New Mexico. Ravenell was a 27-year old male, with a high school diploma and one-year of college education, and the owner of the vehicle. However, Wilson was driving Ravenell's black BMW SUV at the time it was stopped; Ravenell was in the passenger seat. Aple. Br. at 2. Border Patrol Agent Gutierrez asked Wilson to roll down the back windows so he could check for additional passengers. There was no one in the backseat, but Agent Gutierrez smelled marijuana, and sent Wilson and Ravenell to a second inspection.

At the second inspection, Ravenell consented to a dog-sniff. After the canine alerted to the vehicle, Ravenell admitted he had smoked marijuana earlier that day. Ravenell also then consented to a search of the car. When the agents searched the car, they discovered 0.8 pounds of cocaine.

Border Patrol agents arrested Ravenell and Wilson. Border Patrol Agent Gutierrez both read Ravenell his *Miranda* rights, and handed him a form listing his *Miranda* rights. He gave Ravenell time to review the form, which Ravenell signed, indicating he was waiving his rights. After Ravenell signed the form, he was placed in an all-glass holding cell easily viewable by agents. Ravenell was given food and water, checked on by agents "about every hour" to see if he needed anything else, and was told to knock on the glass to get an agent's attention if he did need something. The holding cell also contained a bench and some blankets, to allow

2

detainees to keep warm or sleep while in detention. Border Patrol Agent Mora

testified that Ravenell never asked for anything beyond some food and water; was

"calm and polite" throughout his detention; did not seem confused as to the

instructions being given to him; and did not seem to be under the influence of

something that would have "prevented him from knowing what was going on." In

total, his detention lasted approximately six hours.

Agent Mora briefly questioned Ravenell while he was in holding. Agent Mora

reiterated to Ravenell that he did not have to answer any questions. Nonetheless,

Ravenell proceeded to answer Agent Mora's questions and denied having prior

knowledge of the cocaine found in the vehicle. At that point, Agent Mora ended the

questioning. Their conversation lasted no more than a minute. Agent Mora and the

other Border Patrol agents notified the DEA and did not engage in further

questioning until DEA agents arrived.

At around 7:30 p.m., one of the DEA agents who was coming to question

Ravenell, Agent Christopher Myers, called and asked to speak with him. After

confirming Ravenell had waived his *Miranda* rights, Agent Myers told Ravenell that

he "was not going to ask him any questions over the phone." But Agent Myers also

told him that "[o]ne of you two dumb [mother f***ers][1] is going to go to jail tonight.

One or both of you . . . I've been working all day, I'm tired, and I expect you-all to

---

[1] In his testimony, Agent Myers uses the shorthand "MFs." The record is unclear as to whether Myers used the shorthand, the full phrase, or a different, but similar phrase.

3

tell me the truth when you get out here."[2]  Their phone conversation was brief, and although DEA Agent Myers admitted in his testimony that the language used was vulgar, he insisted that his tone was "stern," to convey that he "meant business," but he was "not yelling or screaming."

DEA Agent Myers also told Ravenell that he was going to have Border Patrol agents put Ravenell and Wilson together in a cell so they could determine the ownership of the cocaine.  After Agent Myers got off the phone, Border Patrol Agent Mora put Ravenell and Wilson in a room together for five minutes.  Agent Mora supervised the interaction and testified that it was "[v]ery calm;" the two were not hostile to one another, and there was no yelling or physical altercation.  Agent Mora noted that when he separated the two back into separate cells both detainees were "calm, civil, and compliant."  In describing their brief conversation, Ravenell testified that he asked Wilson whether he had had a phone call, and whether the cocaine found was Wilson's.  Ravenell testified that Wilson continued to deny owning the cocaine and advised Ravenell not to falsely confess if it was not his.  He did not describe the conversation as violent or coercive, instead stating: "So and that was it. And then the last bit of the time we were just talking about how cold the cell was."

---

[2] Because Agent Myers was travelling to see Ravenell (and not the other way around), "when you get out here" is likely a mistake.

4

At around 9:30 p.m. (about five and a half hours after Wilson and Ravenell entered the checkpoint), DEA Agent Myers arrived, accompanied by DEA Special Agent Nguyen and DEA Agent Hernandez, to question Ravenell as to the ownership of the cocaine. The DEA interrogation took approximately 30 minutes. Special Agent Nguyen read Ravenell his *Miranda* rights again and gave Ravenell the opportunity to review another form with each right listed. To reiterate, this was the second time that day that Ravenell had been Mirandized. And again, he waived his rights. But, unlike during the first interrogation, this time Ravenell confessed to owning the cocaine. He admitted purchasing the cocaine in a Wal-Mart parking lot from a young "Hispanic or Puerto Rican" man who wore his hair in a bun. He also told agents he intended to sell the cocaine to make money to support his struggling family.

Ravenell was indicted for possession with intent to distribute cocaine pursuant to 28 U.S.C. § 841(a)(1), (b)(1)(C). Following his indictment, he moved to suppress his confession as involuntary. He "argued that [the] agents coerced him into confessing by promising to release his vehicle to his sick mother if he took responsibility for the cocaine." Aple. Br. at 8 (citing ROA Vol. I at 49). The district court held an evidentiary hearing on the suppression motion. At the hearing, Ravenell testified that the agents pestered him to confess, and that he only did so because they promised to release his car. The agents, on the other hand, uniformly denied that Ravenell's vehicle was ever used as leverage to obtain his confession. The district court credited the agents' version of the events and denied the motion.

5

Following a jury trial, Ravenell was found guilty. At sentencing, the district court varied downward, imposing a sentence of 30 months' imprisonment and 3 years' supervised release.

Ravenell appeals the district court's denial of his motion to suppress, arguing his confession was involuntary. On appeal he has abandoned his car-related arguments.[3] *See generally* Aplt. Br. Likewise, he does not challenge either the district court's decision to credit the agents' versions of the facts or any of the district court's other factual findings. *Cf. id.* Broadly, he maintains his confession was involuntary for two reasons: (1) Agent Myers used rough, foul language when he spoke with Ravenell on the phone, and (2) the Border Patrol Agents put Ravenell and Wilson in the same room for five minutes.

## II.

We review "*de novo* the voluntariness of a statement, although specific underlying findings of fact are reviewed for clear error." *United States v. Toles*, 297 F.3d 959, 965 (10th Cir. 2002) (citation omitted). Additionally, we "consider[] the evidence in the light most favorable to the district court's determination." *Id.*

"Whether a defendant's incriminating statements were made voluntarily must be assessed from the totality of the circumstances, looking both at the characteristics

---

[3] To the extent that Ravenell's counsel sought to raise these issues at oral argument, we decline to consider them. *WildEarth Guardians v. EPA*, 759 F.3d 1196, 1204 (10th Cir. 2014) (stating "[W]e routinely . . . decline[] to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief" (citation omitted)).

of the defendant and the details of the interrogation." *United States v. Rith*, 164 F.3d 1323, 1333 (10th Cir. 1999) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." *Id.* (citing *Miller v. Fenton*, 474 U.S. 104, 116 (1985)); *see also United States v. Rodebaugh*, 798 F.3d 1281, 1290–91 (10th Cir. 2015) ("[I]t is the [g]overnment's burden to show, by a preponderance of the evidence, that a confession was voluntary." (quotation marks and citation omitted)). Relevant factors include "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to physical punishment." *Rodebaugh*, 798 F.3d at 1290 (quoting *United States v. Lopez*, 437 F.3d 1059, 1063–64 (10th Cir. 2006)). While no factor alone is dispositive, a movant seeking suppression of a confession faces an uphill battle if he was Mirandized. *See Missouri v. Seibert*, 542 U.S. 600, 609 (2004) ("[M]aintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver." (citation omitted)).

Again, Ravenell offers two reasons for why we should hold his confession was coerced: (1) Agent Myers used coarse, vulgar language when he spoke with Ravenell on the phone, and (2) Border Patrol agents put Ravenell and Wilson in the same room for five minutes. Neither action was inherently coercive, and an evaluation of the

7

enumerated factors reveals they are either neutral or weigh in favor of voluntariness. We address each factor in turn.

III.

First, Ravenell has a high school education with some college, and he was 27-years old at the time of these events. Thus, his "age, intelligence, and education," do not suggest he was unusually susceptible to coercion. *See Lopez*, 437 F.3d at 1065 (holding Lopez' personal characteristics did not indicate he was "unusually susceptible to coercion" when he was "thirty-three years old and had completed the eleventh grade," nor was there anything "to suggest he h[as] 'a limited intelligence'").[4] The first factor weighs in favor of voluntariness.

Second, Ravenell's detention was neither unusually long nor harsh. As we explained above, his detention was around six-hours long. Our circuit has approved detentions of similar length. *See Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015) (describing Rohling's five-hour detention as "not unusually long"). Nor were the circumstances of Ravenell's detention harsh. He was given food and water. *See Rohling*, 793 F.3d at 1233 (noting the fact that Rohling was given water and stating

---

[4] Ravenell believes we should find he "lack[s] . . . education and sophistication" because he referred to "blood clots" as "blood clocks." ROA Vol. I at 309. We agree with the government that this "single idiosyncrasy" fails to show Ravenell had limited intelligence. This conclusion is bolstered by the fact that we "consider[] the evidence in the light most favorable to the district court's determination," *Toles*, 297 F.3d at 965, and the district court denied Ravenell's motion to suppress. When viewed in the light most favorable to the district court's decision, this "single idiosyncrasy" undoubtedly fails to show Ravenell had limited intelligence.

8

that it "weigh[ed] in favor of voluntariness").  And, he was provided a blanket and a bench on which to sleep in his holding cell.  We conclude the second factor weighs in favor of voluntariness.

Third, while the questioning was not overly long or intense, Agent Myers did use coarse, foul language.  However, we conclude Agent Myers' language is not enough to tip this factor in Ravenell's favor, rather, it renders the factor neutral.[5] Agent Myers did not raise his voice at Ravenell; he did not threaten Ravenell; the phone call was short; and the other interrogations were similarly brief.[6]  *See United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir. 1990) (affirming, on clear error review,

---

[5] Ravenell contends we should view Agent Myers' comment over the phone against the backdrop of Ravenell's upbringing as an African-American man:

> It would not be too much to infer that DEA Agent Myers [sic] labeling of Mr. Ravenell as a "dumb mother f***er" awakened memories of his upbringing as a black man in a culture that is indisputably racist. [B]lack boys . . . are told to be very careful and respectful with law enforcement because of the threat of violence by white police officers, including lethal force.

Aplt. Br. at 12.  Nevertheless, we conclude this argument is waived.  It was not raised below and Ravenell does not argue plain error in his brief.  *See United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (noting that errors not raised below are subject to plain-error review); *United States v. Roach*, 896 F.3d 1185, 1194 (10th Cir. 2018) (refusing to consider an argument where it had not been raised below and appellant had failed to argue plain error on appeal).

[6] Ravenell makes a cursory argument in his opening brief that we "should exercise [our] supervisory authority over law enforcement and suppress the product of the DEA agent's uncivilized conduct."  Aplt. Br. at 13.  This argument was not preserved below, and again, Ravenell did not argue it should be reviewed for plain error on appeal.  *See Goode*, 483 F.3d at 681; *Roach*, 896 F.3d at 1194.  Therefore, we decline to consider it.

district court's conclusion that detective did not negate voluntariness by "hitting his fist on the table and accusing [Lux] of lying" because his "actions were 'not so extraordinary or egregious as to warrant a finding that they overbore the defendant's will'"). Agent Mora's questioning lasted no more than a minute, and the DEA's in-person interrogation lasted approximately 30 minutes. Finally, Agent Myers' remark that either Wilson or Ravenell was going to jail was not coercive because it was a true statement—Border Patrol agents had found 0.8 pounds of cocaine in the vehicle, and it belonged to either Wilson or Ravenell. We have held that "[i]t is not per se coercion to present a suspect with correct information from which the suspect can make a reasoned decision." *United States v. McNeal*, 862 F.3d 1057, 1064 (10th Cir. 2017). Accordingly, this factor does not weigh in favor of either outcome.

Fourth, Ravenell was advised, repeatedly, of his constitutional rights. He was twice Mirandized (once by Border Patrol agents and once by DEA agents) and reminded of his rights (Border Patrol Agent Mora reminded him of his rights before his second interrogation, as did Agent Myers at the beginning of the phone call). This factor weighs in favor of voluntariness.

Fifth, Ravenell was not "subject to physical punishment," so this factor weighs in favor of voluntariness.

Finally, we analyze Ravenell's five-minute conversation with Wilson separately because it does not fit squarely within any of the enumerated voluntariness factors. Nothing about their conversation suggests it was coercive. From Ravenell's description of the conversation, it appears it was friendly, and there is nothing to

10

suggest that Wilson was acting as a government agent or that he "extorted, intimidated, or otherwise threatened" Ravenell. Aple. Br. at 21. In short, Ravenell's conversation with Wilson does not indicate his subsequent confession was in any way coerced. This is particularly true when viewed in the light of the other factors—four of which weigh in favor of a finding of voluntariness and one of which is neutral.

In sum, viewing the evidence in the light most favorable to the government, the prevailing party below, the totality of the circumstances indicate Ravenell's confession was voluntary.

IV.

For the reasons stated above, we affirm the judgment of the district court.

Entered for the Court


Allison H. Eid
Circuit Judge

11